791 F.2d 579
 THOR POWER TOOL COMPANY, a Delaware Corporation,
Plaintiff-Counterdefendant-Appellant,
v.
Monroe WEINTRAUB, Defendant-Counterclaimant-Appellee,
New Cincinnati Rubber Manufacturing Company, Counterclaimant-Appellee.
 No. 85-1240.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 5, 1985.
Decided May 27, 1986.
 
 James L. Perkins, Winston & Strawn, Chicago, Ill., for plaintiff-counterdefendant-appellant.
 Philip S. Beck, Kirkland & Ellis, Chicago, Ill., for defendant-counterclaimant-appellee.
 Before WOOD and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Plaintiff Thor Power Tool Company ("Thor") entered into a contract with defendant Monroe Weintraub ("Weintraub") to sell the business and assets of a division of Thor, doing business as Cincinnati Rubber Manufacturing Company ("CRM") to Weintraub. Following the sale, a dispute arose over the value of CRM's inventory and the amount of CRM's operating losses. Thor ended up suing Weintraub in federal court in a diversity action for $99,969 on a breach of contract claim, alleging that Weintraub failed to make the final payment due on the contract. Weintraub counterclaimed for breach of contract and fraud.
 
 
 2
 During the trial, Thor attempted to negate Weintraub's evidence of damages by arguing that the New Cincinnati Rubber Manufacturing Company ("New CRM"), not Weintraub, had suffered the damages. The trial judge denied Thor's real-party-in-interest motion and added New CRM to the case as a new party under Fed.R.Civ.P. 21. The jury found for Weintraub and New CRM on the fraud counterclaim and awarded damages of $875,235. Thor now claims that the district court erred by adding New CRM as a new party during trial and by denying Thor's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. We affirm.
 
 DISCUSSION
 
 3
 The factual issues in this case were vigorously contested. We mention this because the appellants devote a great deal of time and space to arguing that we should accept their version of factual issues the jury has already resolved in favor of Weintraub and New CRM. The evidence produced at trial, viewed in the light most favorable to Weintraub and New CRM, showed the following. On August 8, 1979, Thor and Weintraub entered into a contract for the business and assets (with certain exclusions) of CRM. The contract price was $1,148,000, subject to certain adjustments. Thor warranted that the value of the inventory was not less than $770,919.
 
 
 4
 At some point after August 18, 1979, Weintraub became concerned about the quality of the inventory. A September 7, 1979 memorandum by Darryal Hawkins, CRM's chief chemist and quality control officer, concluded that 90,000 to 100,000 pounds of raw material carried on the books at full value were of poor quality. Later reports by Hawkins showed various other items carried at full value which in fact had reduced or no value. In late September, Weintraub's accountant Stanley Bober calculated that after subtracting $120,689 in unuseable raw materials and work-in-process, $97,703 in unsaleable finished goods, and approximately $70,000 in nonexistent inventory, the actual value of CRM's inventory was $499,961, not $770,919. On December 3, 1979, Thor's accountants issued a report which concluded that, according to "CRM's accounting system,"[1] the value of CRM's inventory was $709,520.
 
 
 5
 Thor also misrepresented other aspects of CRM's financial condition. For example, Bober, Weintraub's accountant, testified that CRM's operating losses in the first six months of 1979 were $141,000, not the $14,000 that Thor reported. The financial statements provided by Thor also indicated that CRM had a modest cash surplus, when in fact CRM had a negative cash flow.
 
 
 6
 When Weintraub decided to buy CRM, with Bober's recommendation, both relied upon the financial statements provided by Thor. Irv Danielson, an officer of Thor and its parent Stewart-Warner Corp., refused Weintraub's request to visit the plant and inspect CRM's inventory. Danielson also refused Bober's request to visit the plant and inspect the detailed books and records underlying the financial statements. Danielson claimed concern that the employees would learn the company was for sale. At trial he admitted that the employees already knew.
 
 
 7
 Danielson conceded that, just two days before Weintraub signed the contract, he had informed Weintraub that CRM had made a $20,000 profit in July and the prospects for August looked good also, although CRM had in fact made no profit in July. Weintraub testified that he bought CRM because the financial statements showed a company in a break-even position with a positive cash flow and a strong inventory that could generate more immediate cash. Weintraub ran New CRM for just over two years before he was forced to shut it down. Despite increased sales, New CRM showed a total operating loss of $1,518,711. Bober testified that in the overall transaction, including gains on selling equipment and losses on new capital expenditures, Weintraub and New CRM suffered $1,741,987 in out-of-pocket losses.
 
 
 8
 The jury found for Weintraub and New CRM on the fraud claim and awarded damages of $875,235. After the verdict, Thor filed a motion for judgment n.o.v., or in the alternative, for a new trial. On April 5, 1984, the trial court denied Thor's motion for a judgment n.o.v. On January 14, 1985, the trial court denied Thor's motion for a new trial.
 
 
 9
 Thor argues that the court should have granted a judgment n.o.v. for Thor on the fraud claim because (1) there was no evidence of fraud by Thor, (2) there was no evidence that Weintraub and New CRM suffered any loss, and (3) Weintraub and New CRM failed to demonstrate a right to recover fraud damages from Thor. Thor argues, in the alternative, that a new trial should be ordered because of prejudicial errors by the trial court. Thor's final argument is that it was error for the trial court to dismiss Thor's breach of contract claim.
 
 
 10
 We will first address Thor's contention that prejudicial errors by the trial court necessitate a new trial. Thor bases this contention primarily upon the trial court's decision to add New CRM as a party under Fed.R.Civ.P. 21 during the course of the trial. Because many of Thor's other arguments are premised at least partially upon the claim that the trial court erred by adding New CRM, a resolution of this issue will greatly expedite our consideration of Thor's other arguments.
 
 
 11
 For a federal court sitting in a diversity action, "the standard for reviewing a trial court's disposition of a motion for a new trial is controlled by federal law." Robison v. Lescrenier, 721 F.2d 1101, 1104 (7th Cir.1983). The authority to grant a new trial is confided almost entirely to the discretion of the trial court. See Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980) (per curiam). "The district court's denial of a motion for a new trial should be overturned, therefore, only where the circumstances reveal a clear abuse of discretion." Cook v. Hoppin, 783 F.2d 684, 688 (7th Cir.1986).
 
 
 12
 To review how New CRM became a party to this case, Thor brought this action against Weintraub to recover the last payment on the contract. Weintraub counterclaimed for breach of contract and fraud. At trial, Thor failed to object when Weintraub presented evidence of New CRM's operating losses. When Thor attempted to raise a real-party-in-interest argument to negate Weintraub's evidence of damages, the district court invoked Rule 21 to add New CRM as a party to the action. Although Thor objected to New CRM entering the case and requested a mistrial, Thor did not seek a continuance. The district court denied Thor's motion for a mistrial.
 
 
 13
 Rule 21 provides, in relevant part, that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Thor claims it was surprised by the addition of New CRM, but the trial court noted that "[a]lthough [Thor] was well aware of New CRM's ownership years before, it apparently chose to wait until late in the trial to advance that contention." Our review of the record confirms that the trial court acted within its discretion in adding New CRM. Thor's claim of surprise is belied by Thor's failure to request a continuance at trial. Furthermore, Thor requested no discovery over the weekend following the court's ruling on Friday that New CRM was in the case. Although it is clear that Thor did not want New CRM in the case, there is ample support in the record from which the trial judge could conclude that Thor was not surprised.
 
 
 14
 We note that Thor was represented at trial by experienced counsel. Counsel was no doubt aware of the tactical risk of waiting until the trial was nearly complete to raise a technical motion. Rule 21 was adopted "to obviate the harsh common law adherence to technical rules of joinder," Halladay v. Verschoor, 381 F.2d 100, 108 (8th Cir.1967), which would have allowed Thor's technical real-party-in-interest motion to sideline a nearly completed jury trial. The trial court correctly applied Rule 21 to allow the trial, which the court noted had proceeded from opening statements to jury instructions upon the same damage theory, to continue to a fair conclusion.
 
 
 15
 Thor also contends that a new trial is necessary because the court erred by permitting Weintraub to put into evidence his own valuation of CRM's inventory. The contract specified that Arthur Andersen's valuation of the inventory, under the normal CRM system, would be binding upon the parties. As discussed below, however, there is ample evidence from which the jury could have concluded that Thor fraudulently induced Weintraub to enter into the contract. Certainly Thor did not inform Weintraub that the normal CRM system significantly overstated the value of CRM's inventory. Thor's own accountant conceded that the valuation he did, under the contract, was not consistent with generally accepted accounting principles. Under the circumstances, the trial judge correctly instructed the jury that if it found that Thor had fraudulently induced the contract, then the Arthur Andersen valuation was not binding.
 
 
 16
 For the same reasons, the trial court did not err in refusing to give Thor's proposed jury instructions 23(d) and 34(a), which would have advised the jury of the contract provision which made Arthur Andersen's valuation of the inventory final and conclusive. The trial court also did not err in giving Weintraub's jury instructions 20(b), 22, 23, 24(a), 25, 27, 29, 31(a), 32, and 37, which all related to the fraud counterclaim by Weintraub and New CRM. Because the district court acted within its discretion in adding New CRM, the court did not err by including New CRM in the relevant jury instructions. Finally, Thor contends the trial court erred by admitting into evidence the operating losses of New CRM. The contention is premised upon Thor's argument that New CRM should not have been added, and thus we reject it. Furthermore, Thor did not object either to the evidence when it was introduced at trial or to the jury instruction on damages. In conclusion, we reject Thor's arguments that the trial court abused its discretion by failing to order a new trial.
 
 
 17
 In diversity actions,"state law governs disposition of a motion for judgment notwithstanding the verdict." F.W. Hempel & Co. v. Metal World, Inc., 721 F.2d 610, 613 (7th Cir.1983). In this case, the district court applied Illinois law. Under Illinois law, "judgment notwithstanding the verdict is properly granted by the trial court only when the evidence is so overwhelmingly in favor of the movant 'that no contrary verdict based on that evidence could ever stand.' " Cook v. Hoppin, 783 F.2d 684, 694 (7th Cir.1986) (quoting Pedrick v. Peoria & Eastern Railroad Co., 37 Ill.2d 494, 510, 229 N.E.2d 504 (1967)). In reviewing a district court's denial of a motion for judgment n.o.v., we apply the same standard the district court did in denying the motion. Cook, 783 F.2d at 694. We therefore apply the Pedrick standard to each of Thor's claims.
 
 
 18
 Thor argues primarily that Weintraub and New CRM failed to show the necessary scienter to prove fraud. This claim is meritless. Weintraub and New CRM presented ample evidence from which the jury could have concluded that Danielson, the Thor officer with responsibility over CRM who handled the negotiations with Weintraub, intentionally misrepresented CRM's operating condition and the value of its inventory. Although Thor, primarily through Danielson, denied knowing that the Thor financial statements were false, the jury was not required to believe Danielson. Questions of witness credibility and state of mind are uniquely suited for juries, and an appellate court will not overturn a jury verdict so long as the prevailing party presented some evidence on which the jury could have based its decision.
 
 
 19
 Thor's basic argument on this point is that the Arthur Andersen report should have been binding upon Weintraub and New CRM as the value of CRM's inventory, because the contract specified that the decision of Thor's independent public accountant "should be final and binding on the parties." The jury found, however, that this provision in the contract was induced by fraud. Danielson did not inform Weintraub that CRM's system overvalued inventory and was not consistent with generally accepted accounting principles (as Thor's accountant conceded at trial). Danielson was also impeached by a memorandum he had written earlier when he tried to deny at trial that he had proposed the provision to "satisfy Bober's point without changing his remedy." The parties presented conflicting testimony at trial, and the jury chose to believe Weintraub and New CRM. In this circumstance, a judgment n.o.v. is inappropriate.
 
 
 20
 Thor also challenges the trial court's instruction to the jury concerning the Arthur Andersen report. Thor concedes that it failed to object to the instruction at trial. Because Thor does not argue that any exceptional circumstances exist, Thor has waived any challenge to the instruction. See Spanish Action Committee v. City of Chicago, 766 F.2d 315, 319 (7th Cir.1985).
 
 
 21
 Thor contends that neither Weintraub nor New CRM suffered any loss on account of Thor's actions, but rather both made a "very substantial profit." Thor bases this upon the liquidation value of CRM's assets, which Thor claims exceeded Weintraub's purchase price. Thor argues that as a matter of law New CRM's operating losses are not admissible as evidence of damages under the Illinois "benefit of the bargain" rule. See Home Savings & Loan Association v. Schneider, 127 Ill.App.3d 689, 694-95, 82 Ill.Dec. 941, 469 N.E.2d 585 (1984), aff'd in part, rev'd in part, 108 Ill.2d 277, 91 Ill.Dec. 590, 483 N.E.2d 1225 (1985).
 
 
 22
 We need not reach this argument, however, because Thor has waived the right to challenge New CRM's operating losses as an element of damages. In Will v. Comprehensive Accounting Corp., 776 F.2d 665, 675 (7th Cir.1985), we said:
 
 
 23
 When a party does not ask for an instruction limiting the kinds of damages the jury may award (or informing the jury of the things it must find before it may award an item of damages), we may reverse the district court's denial of a judgment n.o.v. only if no reasonable juror could have found the evidence sufficient under the instructions it heard. If a party could argue that the evidence was insufficient under the correct legal standard, this would be an indirect method of attacking the instructions, which we have just held defendants may not do. Once the law of this case is settled by failure to object to the instructions, the parties may argue only that the jury did not play its proper part. Because the jury's part is to apply the instructions to the facts, we may scrutinize its conclusions only to find out whether it did so.
 
 
 24
 Because Weintraub and New CRM presented evidence of operating losses in excess of $1,500,000, we cannot say that no reasonable juror could have found the evidence sufficient under the instructions it heard.
 
 
 25
 Thor's final argument is that the trial court should have issued a judgment n.o.v. because neither Weintraub nor New CRM proved a right to recover damages from Thor for fraud and deceit. Thor argues that it did not know or have any reason to believe that New CRM would rely on the fraudulent misrepresentations made to Weintraub. Thor made its representations to Weintraub, however, in order to induce him to buy CRM and operate it as an ongoing business. Thor knew, and the purchase agreement explicitly contemplated, that Weintraub would probably form a corporate entity instead of operating the business himself. Thor knew that the corporate entity formed by Weintraub, i.e., New CRM, would operate on the basis of and rely upon Thor's fraudulent misrepresentations. Therefore, New CRM was entitled to recover fraud damages from Thor.
 
 
 26
 Thor also argues that even if New CRM's operating losses are an element of damages, Weintraub and New CRM cannot recover damages sustained after Thor's fraud was discovered.[2] Because Thor failed to offer a limiting instruction on damages, it has waived this argument. Will, 776 F.2d at 675. Even if that were not the case, however, we would be hesitant to accept Thor's argument. Generally, a defrauded party cannot recover damages for the period after the victim discovers the fraud, because he no longer has any basis for relying on the misrepresentations. See, e.g., Clements Auto Co. v. Service Bureau Corp., 444 F.2d 169, 184 (8th Cir.1971). An exception to this general rule, however, is that "where the defrauded party discovers the fraud after substantial performance or where it would be economically unreasonable to terminate the relationship, he may affirm or continue the contract and then bring suit for his entire damages." Id. at 184.
 
 
 27
 In a case such as this one involving the sale of an ongoing business, a purchaser who finds itself defrauded by the seller is put in a difficult position. Clearly the purchaser has a duty to take commercially reasonable steps to mitigate the damages. This generally foists upon the seller the difficult choice of whether to immediately liquidate all the assets of the business (which may yield severely depressed prices and entail substantial windup costs) or try to continue operating the business and turn it around. We are hesitant to allow a defrauding seller who has placed a purchaser in such a predicament to use the purchaser's dilemma to its own advantage. Here Weintraub and New CRM tried to make a go of the business, not in reliance upon Thor's misrepresentations which they now knew to be false, but rather as the most commercially reasonable method to mitigate the damages. Weintraub and New CRM were not able to save the business and they lost a great deal of money, only part of which the jury awarded as damages, but we cannot say that as a matter of law their attempt to save the business was not a commercially reasonable attempt to mitigate damages.
 
 
 28
 Thor also claims that the verdict in favor of New CRM is either void or erroneous because New CRM did not file a pleading. Thor cites no cases involving Rule 21 which hold that a court must require an added party to file a pleading. Moreover, Rule 21 includes no such requirement for added parties, other than to leave to the trial court the discretion to condition addition of new parties "on such terms as are just." As we discussed above, the trial judge acted within his discretion in determining that it would be appropriate to bring New CRM into the case, and that the new party would not change the issues. Thor cites no authority for its contention that New CRM cannot recover because it failed to file a pleading, and we decline to adopt such an inflexible rule. We affirm the trial court's denial of Thor's motion for a judgment n.o.v.
 
 
 29
 The trial judge instructed the jury that if it found for Weintraub and New CRM on the fraud counterclaim, the jury did not need to resolve Thor's claim and Weintraub's counterclaim on the contract. After the jury returned a verdict for Weintraub and New CRM on the fraud issue, the trial judge dismissed Thor's claim. Thor argues that this was error and requests that we remand the case and grant a new trial on the contract claim. Because we affirm the district court's decision to accept the jury's verdict and deny Thor's post-trial motion, it is unnecessary to remand for a retrial on the contract claim. The jury determined that Thor fraudulently induced Weintraub to enter into the contract, knowing that Weintraub would probably form a corporation (New CRM) to operate the business in reliance upon Thor's fraudulent misrepresentations. Therefore, the contract was unenforceable and the trial court correctly dismissed Thor's contract claim.
 
 CONCLUSION
 
 30
 The major controversy in this case arose from the trial court's decision to add New CRM as a new party under Rule 21 during the course of the trial. The trial judge properly utilized Rule 21 to prevent a technical real-party-in-interest motion from sidelining a nearly completed jury trial. The judge determined that adding New CRM did not change the issues or result in prejudice or unfair surprise to Thor. Indeed, although Thor protested the court's denial of its real-party-in-interest motion, it did not seek a continuance to respond to the court's Rule 21 order. Other than the Rule 21 decision, this was simply a vigorously contested contract case where the parties disagreed about virtually everything and presented two vastly different interpretations of the events to the jury. The jury chose to believe Weintraub and New CRM and the district court refused to disturb that verdict.[3] The district court's decision is
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Thor argued both at trial and on appeal that since the contract specified that the inventory be valued by "the normal CRM system," the fact that "the normal CRM system" significantly overstated the value by carrying bad inventory at full price was not misrepresentation. Wilson Besant of Arthur Andersen & Co., Thor's accountant, conceded at trial that he could not have signed the December 21, 1979 report if it had specified generally accepted accounting principles, as opposed to "the normal CRM system." The Weintraub valuation, by his accountant Bober, was proper under generally accepted accounting principles. Thor never informed Weintraub about the deficiencies of the "normal CRM system," and evidence indicated that Thor intentionally concealed the serious inventory problems from Weintraub
 
 
 [2]
 Thor also argues that New CRM's operating losses may have been attributable to factors such as bad management and accounting manipulations, not Thor's fraud. Such contested issues of fact are best left to the jury, and we decline to disturb its verdict on this ground
 
 
 [3]
 To the extent Thor raises other arguments not specifically addressed in this opinion, we find such arguments to be without merit