**Isidore STRAUSS, Plaintiff-Appellee,**

v.

**STRATOJAC CORPORATION,**
**Defendant-Appellant.**

No. 85–1498.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1986.

Decided Jan. 26, 1987.

Hugh C. Griffin, Lord, Bissell, & Brook, Chicago, Ill., for defendant-appellant.

Saul I. Ruman, Saul I. Ruman & Assoc., Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Appellant Stratojac Corporation (Stratojac) appeals from a judgment entered against it on a jury verdict for $75,000 in compensatory damages and $75,000 in punitive damages. Because Stratojac's challenges to this judgment either have no merit or have been waived, we affirm the judgment of the district court.

I

Appellee Isidore Strauss, a resident of New York, sought and obtained a position as special assistant to the president of Winer Manufacturing, a clothing manufacturer located in Hammond, Indiana. The president and owner of Winer Manufacturing, Louis Winer, was in his late seventies. Mr. Winer was seeking an assistant to help him in the day-to-day operation of the business. However, he was also attempting to identify a suitable purchaser for his company.

The employment agreement executed by Mr. Strauss and Mr. Winer provided for a six-month trial period. During this time, Winer Manufacturing agreed to pay Mr. Strauss' expenses for commuting between New York and Indiana. Under the terms of the contract, either party could terminate the agreement at the end of the six-month period. If the arrangement proved mutually beneficial, the agreement provided that, at the end of that six-month period, the parties expected Strauss to relocate his

family in the Hammond area, and that the term of employment would continue through October 31, 1985. The agreement also provided that Strauss' employment agreement was assignable to the purchaser of Winer Manufacturing, if the company were in fact sold.

The six-month period ended on October 31, 1983. At that time, Mr. Winer was negotiating the sale of Winer Manufacturing to Stratojac. Because the parties had not resolved whether Stratojac would take on Mr. Strauss' contract, Mr. Winer told Mr. Strauss that he would not be expected to relocate his family while his status was uncertain. Mr. Winer also indicated that the company would continue to pay Mr. Strauss' commuting expenses until his long-term employment status was resolved.

On January 31, 1984, Stratojac purchased Winer Manufacturing. As part of the sales agreement, Stratojac agreed to assume Strauss' employment agreement. Mr. Strauss was given the position of Vice President of Manufacturing which he claims was a demotion. The assignment agreement was specifically subject to the terms of the sales agreement between Stratojac and Winer Manufacturing. Apparently, Mr. Strauss sought to have a definite statement of his position with Stratojac. Stratojac, in turn, demanded that Mr. Strauss either move or commit to move to the Hammond area within a few weeks. In a letter dated February 16, 1984, Stratojac's President, Steve Sakin, informed Mr. Strauss that Stratojac would no longer reimburse him for his commuting expenses, and that, if Stratojac did not receive, within three business days, a written commitment from Strauss to move to the Hammond area, it would take "appropriate" action.

On February 22, 1984, Mr. Sakin told Mr. Strauss that he was "fired" because he would not commit himself to relocating his family to the Hammond area.

On March 2, 1984, Mr. Strauss commenced this action for breach of contract, interference with contractual relations, conspiracy to breach a contract, and conspiracy to interfere with contractual relations. The case was tried before a jury,[1] and, on January 11, 1985, the jury returned a verdict for Mr. Strauss and against Stratojac in the amount of $75,000 in compensatory damages and $75,000 in punitive damages. The jury also answered five interrogatories that were submitted to it at the request of the defendants. A subsequent motion for judgment notwithstanding the verdict (judgment n.o.v.) was denied. This appeal followed.

In this court, Stratojac raises four challenges to the judgment of the district court.[2] It submits: 1) that the district court should not have entered judgment on the jury's verdict because the answers to the special interrogatories are inconsistent with one another and at least one of these answers is also inconsistent with the general verdict; 2) that Mr. Strauss has not established the necessary elements to prevail on a breach of contract claim; 3) that the evidence does not support an award of punitive damages; and 4) that the compensatory damage award is excessive. We shall address each of these contentions in the following sections.

## II

### Inconsistent Verdicts

#### A

Stratojac first contends that the jury's answers to the special interrogatories are

1. By consent of the parties, the case was tried by a magistrate. *See* 28 U.S.C. § 636(b)(2).

2. At oral argument, this court raised *sua sponte* the issue of subject matter jurisdiction. After reviewing the supplemental briefs of the parties, we concluded that the record on appeal was insufficient to permit us to determine whether the requisite diversity of citizenship had existed between the parties. *See* 28 U.S.C. § 1332. While retaining jurisdiction, we remanded the case to the district court for a hearing limited to

the jurisdictional question, 787 F.2d 596 (7th Cir.1986). *See* 28 U.S.C. § 2106. The magistrate conducted a hearing and both parties submitted evidence. The magistrate made extensive findings of fact and concluded that, at the commencement of the action in the district court, Mr. Strauss was a resident of New York and Stratojac was a corporation organized under the laws of Indiana with its principal place of business in Indiana.

inconsistent with one another and that at least one of them is inconsistent with the general verdict. Stratojac argues that the entry of judgment was therefore improper under Fed.R.Civ.P. 49. Mr. Strauss counters that the jury's replies are not inherently inconsistent. In any event, he continues, Stratojac has waived this argument by failing to raise it before the trial court.

At the request of the defendant, the court submitted the following interrogatories to the jury (jury responses are indicated by italics):

> If the jury has returned a verdict for the plaintiff, it is hereby instructed to answer the following Interrogatories:
>
> 1. If you found against some or all of the defendants and in favor of the plaintiff, is your verdict based on the following:
>
> a. *wrongful interference with a contract; and/or*
>
> b. *breach of contract; and/or*
>
> c. conspiracy between Stratojac and Winer to interfere with the contract; and/or
>
> d. conspiracy between Stratojac and Winer to breach the contract.
>
> 2. As to (a), identify which, if any, of the defendants you found liable for wrongful interference with the contract. *Stratojac Corp.*
>
> 3. As to (b), identify which, if any, of the defendants you found liable for breach of contract. *Stratojac Corp.*
>
> 4. If you award plaintiff compensatory damages, were the damages awarded for:
>
> a. *breach of contract*
>
> b. wrongful interference
>
> c. both
>
> 5. If you award plaintiff punitive damages, were the damages awarded for:
>
> a. wrongful interference
>
> b. breach of contract
>
> c. conspiracy to breach contract
>
> d. *conspiracy to interfere with contract*

Stratojac now argues that one or more of these answers is inconsistent with the general verdict and that the answers are also inconsistent with each other. In its view, the foregoing answers contain the following inconsistencies: 1) because an assignor remains liable on the contract after a valid assignment, the jury could not consistently find Stratojac, but not Winer, liable for breach of contract; 2) because Stratojac was a party to the contract, the jury could not consistently find Stratojac liable for conspiracy to interfere with the contract; 3) because the jury found that only Stratojac breached the contract, Stratojac could not be liable for interference with Winer Manufacturing's contractual relations; 4) because conspiracy requires more than one conspirator, the jury could not, consistently with Indiana law, award punitive damages for conspiracy to interfere with the contract against Stratojac only (i.e., the jury could not hold only one of two defendants liable for conspiracy); and 5) because there was no award of compensatory damages for conspiracy to interfere with the contract, the jury could not, consistently with Indiana law, award punitive damages on that claim.

### B

■ We need not resolve definitively Stratojac's contentions with respect to these inconsistencies because we believe that, under the circumstances of this case, Stratojac waived its objection on these grounds to the general jury verdict. This case is governed by the last sentence of Fed.R.Civ.P. 49(b):

> When the answers [to the special interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

We have not had a previous occasion to decide whether, in the context of this last sentence of Rule 49(b), a failure to object to any alleged inconsistencies in the special interrogatories constitutes a waiver.

While the approaches of the other circuits have not been uniform,[3] several circuits have held that a party can waive any objections to such inconsistencies by failing to raise them before the jury has been discharged. *See, e.g., Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.,* 791 F.2d 1416, 1422–23 (10th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986); *Skillin v. Kimball,* 643 F.2d 19, 19–20 (1st Cir.1981); *Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529, 534–35 (5th Cir.1974). In deciding that it was appropriate to invoke the doctrine of waiver, several of these courts have relied on our previous holdings in *Barnes v. Brown,* 430 F.2d 578, 580 (7th Cir.1970) and *Cundiff v. Washburn,* 393 F.2d 505, 507 (7th Cir. 1968). *See, e.g., Diamond Shamrock,* 791 F.2d at 1422–23; *Skillin,* 643 F.2d at 20. In both *Barnes* and *Cundiff,* the answers to the interrogatories were consistent with one another but inconsistent with the general verdict. Therefore the second, rather than the third, sentence of Rule 49(b) governed. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2513 (1971). In these cases, we held that invocation of the doctrine of waiver was appropriate because:

> Any other decision would hamper the just and efficient operation of the federal courts. It would encourage jury-shopping by litigants, permitting them to decide whether to take their chances on resubmitting the verdict and findings to the jury sitting or remain silent thereby allowing the entry of judgment and moving for a new trial before a new jury. It might also encourage the use of special interrogatories as a trial tactic to create the opportunity for such inconsistency and preserve the option for a new trial on grounds of such inconsistency.

In contrast, the rule that objection on grounds of inconsistency is waived by failure to move for resubmission promotes the fair and expeditious correction of error. It requires that the error be corrected in the proceeding in which it is made, by the jury which made it.

*Cundiff,* 393 F.2d at 507; *see also Barnes,* 430 F.2d at 580.

We believe that the same considerations make it quite appropriate to apply the doctrine of waiver here. In this case, the verdict form and interrogatories were submitted by Stratojac. The potential for inconsistent replies should have been apparent to counsel when these materials were submitted to the jury. We also note that, when the jury returned its verdict, the magistrate permitted counsel to examine the replies to the interrogatories. If counsel who had submitted the questions saw no inconsistency and raised no objection to the discharge of the jury, we can, at least under the circumstances of this case, see no reason why he should be permitted to try his luck with a second jury. Proper respect for the jury verdict and for the court's responsibility to manage its caseload fairly and expeditiously militate against such a course.

We realize that, at some future date, we might encounter a case where the inconsistency in the special interrogatories is so obvious that it would be proper to hold that the trial judge had an independent responsibility to act despite trial counsel's silence. *Cf. Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 634–35 (2d Cir.1986). However, this case does not, in our judgment, present such a situation. The trial judge has a responsibility to uphold the seventh amendment and must make every reasonable effort to sustain the jury verdict by

---

**3.** In *Waggoner v. Mosti,* 792 F.2d 595, 596–97 (6th Cir.1986), the court stated that a district court had no authority to enter judgment where answers to interrogatories were inconsistent with one another and at least one answer was also inconsistent with the general verdict. The court did not discuss the requirement of an objection. In *Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 634 (2d Cir.1986), the court indicated that although "a party's failure to object carries some weight in our analysis on appeal," the trial judge has a responsibility to resolve inconsistencies even where no objection is made. As noted in the text, other courts have held that a party can waive any objections to such inconsistencies by failing to raise them before the jury has been discharged.

reading the answers consistently. *See Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *see also Schaafsma,* 802 F.2d at 635. Here, the conflict is hardly plain. Indeed, although we find it unnecessary to resolve definitively the rather complicated questions of Indiana law involved, it may well be possible to harmonize the answers that Stratojac submits are inconsistent.[4]

Stratojac's conduct of the litigation on the motion for remittitur and alteration of verdict also makes it appropriate to invoke the doctrine of waiver. In its brief in support of motion for remittitur and alteration of verdict, Stratojac raised Fed.R.Civ.P. 49(b) inconsistency arguments *other than those raised on appeal before this court.*

**4.** As noted earlier in the text, Stratojac's specific arguments are that: 1) because an assignor remains liable on the contract after a valid assignment, the jury could not find Stratojac, but not Winer, liable for breach of contract; 2) because Stratojac was a party to the contract, the jury could not find Stratojac liable for conspiracy to interfere with the contract; 3) because the jury found that only Stratojac breached the contract, Stratojac could not be liable for interference with contractual relations; 4) because conspiracy requires more than one conspirator, the jury could not award punitive damages for conspiracy to interfere with the contract against Stratojac only (i.e., the jury could not hold only one of two defendants liable for conspiracy); and 5) because there was no award of compensatory damages for conspiracy to interfere with the contract, the jury could not award punitive damages on that claim.

First, although, under Indiana law, an assignor of a contract remains liable on the contract after the assignment, *Boswell v. Lyon,* 401 N.E.2d 735, 744 (Ind.App.1980), the assignor is liable as a surety. *Id.* Because a surety's liability is joint and several with the principal's liability, *First Nat'l Bank of South Bend v. Mayr,* 189 Ind. 299, 305, 127 N.E. 7, 8–9 (1920), a verdict against the surety or the principal individually should stand, even though the two were sued as joint tortfeasors. *Inter State Motor Freight Sys. v. Henry,* 111 Ind.App. 179, 189, 38 N.E.2d 909, 912–13 (1942).

Second, the next two claimed inconsistencies, that the tort of interference with a contract requires the plaintiff to show that the contract was breached and that a party to a contract cannot conspire to interfere with that contract, amount to challenges of a jury instruction, R.71, Court's Instruction No. 28, to which Stratojac made no objection. Tr. vol. V at 12–13. Therefore, Stratojac has waived these arguments.

At the same time, Stratojac did *not* raise the alleged inconsistencies it now suggests. Although it was obviously aware of the applicability of Rule 49(b) to this case and the importance of inconsistency arguments, Stratojac failed to raise the present inconsistency arguments until it filed its brief with this court. Thus, the trial court and opposing counsel were further misled with respect to Stratojac's satisfaction or dissatisfaction with the jury verdict. As we noted in a similar context, "[i]t is well-settled law that a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented." *Weise v. United States,* 724 F.2d 587, 590–91 (7th Cir.1984) (quoting *International Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 224 (7th Cir.1981)).[5]

Fed.R.Civ.P. 51; *Thor Power Tool Co. v. Weintraub,* 791 F.2d 579, 584 (7th Cir.1986); *Davis v. Consolidated Rail Corp.,* 788 F.2d 1260, 1267–68 (7th Cir.1986); *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 549 (7th Cir.1982).

Third, because, under Indiana law, "[t]here is no civil action for conspiracy, but rather the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself," *Miller v. Ortman,* 235 Ind. 641, 669, 136 N.E.2d 17, 33 (1956) (quoting *Grimm v. Baumgart,* 121 Ind.App. 626, 632, 96 N.E.2d 915, 917 (1951)), it was not inconsistent for the jury to hold only Stratojac liable for punitive damages on the conspiracy to interfere with contractual relations claim. *See A.S.C. Corp. v. First Nat'l Bank of Elwood,* 161 N.E.2d 179, 185 (Ind.App.1959), *modified on other grounds,* 241 Ind. 19, 167 N.E.2d 460 (1960).

Finally, because liability in a civil conspiracy is for the damages arising from the acts committed pursuant to the conspiracy, *Miller,* 235 Ind. at 669, 136 N.E.2d at 33, it was not inconsistent for the jury to award punitive damages for conspiracy to interfere with the contract claim. The conspiracy claim incorporated at least part of the breach of contract claim. *See* R.1, ¶¶ 12(b), 15. Therefore, we cannot say that no compensatory damages were awarded on the conspiracy to interfere with the contract claim.

**5.** Stratojac argued that the answer to special interrogatory number 4, which indicated that compensatory damages were awarded only on the breach of contract claim, was inconsistent with the general verdict award of $75,000 in compensatory damages because Indiana law required a compensatory damage award of less than $75,000 on the breach of contract claim (an argument made to this court as well, *see* Part V, *infra* ).

## III

### Breach of Contract

■ Stratojac's next argument is that Mr. Strauss failed to establish the necessary elements of his breach of contract claim. Specifically, Stratojac argues that Mr. Strauss failed to show that he was willing to perform and that Stratojac actually breached the employment agreement. Appellant's Br. at 22–29. Mr. Strauss alleges that Stratojac had breached the agreement by effectively demoting him. Stratojac claims that the employment agreement gave the company the right to alter Mr. Strauss' duties as long as he was kept in an executive position.

Under Indiana law, when the terms of a contract are unambiguous, the court must determine their meaning as a matter of law. *Washington Nat'l Corp. v. Sears, Roebuck & Co.*, 474 N.E.2d 116, 121 (Ind. App.1985). When the terms are ambiguous, however, the determination of the meaning of those terms becomes a question of fact. *Hearst Corp. v. Cuneo Press, Inc.*, 291 F.2d 714, 720 (7th Cir.1961); *Midwestern Indem. Co. v. Leffler Constr. Co.*, 463 N.E.2d 1130, 1133 (Ind.App.1984). The court found the terms of the employment agreement to be ambiguous, and therefore, it submitted the question of breach to the jury. The jury found that Stratojac had breached the employment agreement. This court can overrule the jury's determination only if it is clearly erroneous. *Jefferson Nat'l Bank of Miami Beach v. Central Nat'l Bank in Chicago*, 700 F.2d 1143, 1156 (7th Cir.1983). *See generally Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The jury's finding that Stratojac breached the employment agreement must stand.

More than enough evidence was presented to support the conclusion that Mr. Strauss was not required to relocate his family in the Hammond area by a specific date, especially after Mr. Winer allowed the first "deadline" to pass. Furthermore, Mr. Strauss presented sufficient evidence to support a finding that Stratojac demoted him to a position below that provided for in the agreement, and thus, that Stratojac breached the agreement. For these reasons, we find unpersuasive Stratojac's argument that Mr. Strauss has failed to establish these two elements of his breach of contract claim.

## IV

### Evidence Supporting the Punitive Damage Award

■ Stratojac also argues that there was insufficient evidence to support an award of punitive damages. Under Indiana law, an award of punitive damages must be supported by clear and convincing evidence.[6] *Traveler's Indem. Co. v. Armstrong*, 442 N.E.2d 349, 358–65 (Ind.1982). The reviewing court does not weigh for itself the evidence presented at trial. Instead, it seeks "to ascertain if there was any [evidence] at all from which a reasonable man, employing *the clear and convincing rule*, could have found that [the defendant's] conduct was willful and wanton." *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019, 1024 (Ind.1986) (emphasis in original).

Mr. Strauss presented evidence from which the jury could have found the existence of "malice, fraud, gross negligence, or oppressiveness," *Armstrong*, 442 N.E.2d at 362, and that this conduct was not "the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere

---

6. This court has previously acknowledged that some doubt exists regarding whether we should use the state or federal standard to review the sufficiency of the evidence. *See Matter of Innovative Constr. Sys., Inc.*, 793 F.2d 875, 887 & n. 10 (7th Cir.1986); *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 970–71 (7th Cir.1983). However, we need not resolve this question because Mr. Strauss presented sufficient evidence to support the award of punitive damages under any standard applicable in civil litigation. Indiana's standard, which requires an award of punitive damages to be supported by clear and convincing evidence, is "a standard which is but minutely below the 'reasonable doubt' standard." *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019, 1022 (Ind.1986).

negligence or other such noniniquitous human failing." *Id.* To use the language of the court in *Traina,* the evidence presented could support a finding of:

> conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury. *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171; a "conscious indifference," *Hoesel v. Cain* (1944), 222 Ind. 330, 53 N.E.2d 165 (*rehearing denied*); "heedless indifference" and "reckless disregard for the safety of others," *Beeman v. State* (1953), 232 Ind. 683, 115 N.E.2d 919; "reprehensible conduct" and "heedless disregard of the consequences," *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 362 N.E.2d 845.

*Traina,* 486 N.E.2d at 1023. Mr. Strauss presented evidence that neither he nor his position was necessary to the Stratojac operation, and that the only reason Stratojac agreed to assume Mr. Strauss' contract was to obtain financing from Mr. Winer. Given these facts, the jury was certainly entitled to interpret Stratojac's subsequent actions—asking Mr. Strauss to take a pay cut, demoting him, demanding that he commit himself to moving to the Hammond area within a few weeks, and finally, terminating his employment—as amounting to "willful and wanton misconduct." *Id.* We are unwilling to hold that the jury's award of punitive damages was not supported by clear and convincing evidence. *Armstrong,* 442 N.E.2d at 358–65.

 To the extent that Stratojac claims that the punitive damage award is excessive, it must also fail. An award of punitive damages will not be set aside by this court as excessive "unless there was no rational connection between the evidence on damages and the verdict—unless, in other words, the verdict was 'monstrously excessive.' " *Abernathy v. Superior Hardwoods, Inc.,* 704 F.2d 963, 971 (7th Cir.1983) (quoting *Quilter v. Elgin, Joliet & E. Ry.,* 409 F.2d 338, 340 (7th Cir.1969)). When, as here, the jury and the trial judge who monitored the proceedings agree on the appropriateness of the award, "we demand a particularly persuasive showing of excessiveness...." *Matter of Innovative Constr. Sys., Inc.,* 793 F.2d 875, 888 (7th Cir.1986); *see Abernathy,* 704 F.2d at 971. The jury awarded Mr. Strauss $75,000 in punitive damages, the same amount as it awarded him in compensatory damages. It does not seem irrational to punish Stratojac by equating the punitive damage award with the amount Stratojac sought to save itself by terminating Strauss. As stated in *Hunter v. Allis-Chalmers Corp.,* 797 F.2d 1417, 1425 (7th Cir.1986), "[i]t is not easy to say what would be the right amount of punishment for this deliberate wrongdoing ... but it is easy to say that [$75,000] was not too much."

## V

### Compensatory Damages

Stratojac's final argument is that it is entitled to a remittitur of the compensatory damage award or to a new trial on compensatory damages because the award does not reflect amounts that Mr. Strauss reasonably could have been expected to earn from his new employment between the time of trial and the expiration date of the contract. Stratojac argues: that Indiana law requires mitigation of damages; that mitigation in this case includes amounts Mr. Strauss reasonably could have expected to earn from his new position after, as well as before, trial; and that, by the proper calculations, Mr. Strauss' maximum compensatory damage award should have been $32,000.

 We will not disturb a jury award of damages unless it is grossly excessive. *Hunter,* 797 F.2d at 1424 (citing *Innovative Constr. Sys.,* 793 F.2d at 887; *Abernathy,* 704 F.2d at 971). As the district court noted in denying Stratojac's motion for remittitur and alteration of verdict, Stratojac tendered the instruction on mitigation of damages, and it appears that the jury relied upon this instruction in reaching its

compensatory damage award. R.110 at 5–6. The instruction provided for the reduction of Mr. Strauss' damages only to the extent he "has earned" income from his new job. It makes no mention of earnings he may reasonably expect from his new job. Stratojac argues that the district court and the jury incorrectly focused on this instruction and did not give proper consideration to other instructions which provided that Mr. Strauss was not entitled to be placed in a better position than he would have been absent the breach.

Several factors militate against our acceptance of this argument. First, under the jury instruction given, the award was properly calculated. Any objection to that instruction has been waived because Stratojac did not raise it before the jury retired. Fed.R.Civ.P. 51; *Thor Power Tool Co. v. Weintraub*, 791 F.2d 579, 584 (7th Cir.1986); *Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1267–68 (7th Cir. 1986); *Exxon Corp. v. Exxene Corp.*, 696 F.2d 544, 549 (7th Cir.1982). Second, Mr. Strauss had no guarantee that his new employment would continue through the unexpired portion of his contract with Stratojac. Therefore, the amount of income that he could reasonably expect to earn was an appropriate question for the jury. Finally, the burden of proving that the employee has other earnings falls on the employer. *Seco Chem., Inc. v. Stewart*, 169 Ind.App. 624, 636, 349 N.E.2d 733, 740 (1976). The employee is not required to show that he will not earn any income in the interim period. The fact that Stratojac failed to persuade the jury regarding Mr. Strauss' expected future income warrants neither a reduction of the compensatory damage award nor a new trial on the issue of compensatory damages. This court will not question the factual determinations of the jury.

Because we find no merit in Stratojac's contentions, we affirm the judgment of the district court in favor of Mr. Strauss.

AFFIRMED.