**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 18, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EVANSTON INSURANCE COMPANY,

Plaintiff - Appellee,

v.

AMINOKIT LABORATORIES, INC.,

Defendant - Appellant.

No. 19-1065
(D.C. No. 1:15-CV-02665-RM-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

In this diversity case, an insurer asserts claims against its insured for fraud and

unjust enrichment. We must resolve whether, in the circumstances of this case,

Colorado law[1] permits an insurer to recover a settlement payment made on behalf of

its insured under either theory. Here, the insured fraudulently obtained an insurance

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Under diversity jurisdiction, we apply Colorado's substantive law. *See Erie
R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Wade v. EMCASCO Ins.*, 483 F.3d 657,
665 (10th Cir. 2007). We "must follow the most recent decisions of [Colorado's]
highest court." *Wade*, 483 F.3d at 665–66 (citation omitted). And "[w]here no
controlling state decision exists, [we] must attempt to predict what the state's highest
court would do." *Id.* at 666 (citation and internal quotation marks omitted).

policy for its inpatient-drug-treatment center, and when the insured was sued by a former patient, the insurer assumed the insured's defense, subject to a reservation of rights. Even after learning that the insured had fraudulently obtained the policy, the insurer settled with the former patient under pressure from the insured. As it said it would, the insurer now seeks to recover the settlement payment from its insured. Because we agree that the insurer can recover the settlement payment as fraud damages, we do not consider unjust enrichment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Aminokit Laboratories, Inc., a Colorado Corporation, owned and operated an addiction-treatment center in Lone Tree, Colorado. On October 19, 2014, Aminokit procured an insurance policy for this treatment center from Evanston Insurance Company. The policy covered "outpatient drug/alcohol rehab services[.]" Appellant's App. vol. 1 at 139. To secure the policy, Aminokit made several material misrepresentations and omissions. For example, Aminokit failed to disclose that it maintained overnight beds for its patients, instead claiming that it operated its business solely between 10:00 a.m. and 5:00 p.m. Aminokit also falsely "denied that any of its employees had ever been evaluated or treated for alcoholism or drug addiction[]" and misrepresented the circumstances by which its CEO (who provided medical care to Aminokit patients) had lost her chiropractic license. Appellant's App. vol. 2 at 322.

2

On July 20, 2015, Brandon Lassley, a former Aminokit patient, sued Aminokit, Dr. Jonathan Lee (Aminokit's Medical Director), and Tamea Rae Sisco (Aminokit's CEO) in the District of Colorado.[2] Lassley alleged violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 to -1214, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. He also alleged two conspiracy claims, one federal and one state, stemming from the inpatient treatment he had received from Aminokit. Aminokit tendered the complaint to Evanston, and on August 28, 2015, Evanston declined to "provide a defense to Aminokit," concluding that the claims were outside the scope of coverage, because they alleged intentional and fraudulent conduct. Appellee's Suppl. App. at 122.

On October 14, 2015, Lassley amended his complaint, adding state claims against Aminokit and Dr. Lee for negligence and breach of fiduciary duty. Under the new claims, Lassley alleged that Dr. Lee was negligent both as a treating physician and as Aminokit's medical director and that Aminokit was vicariously liable for this negligence. Aminokit tendered the amended complaint to Evanston, which again concluded that "no coverage [was] afforded" for the Lassley suit. Appellee's Suppl. App. at 155. But this time, Evanston accepted Aminokit's defense "subject to a full reservation of rights—including the right to withdraw the defense and the right to

---

[2] Neither Dr. Lee nor Sisco are parties in this appeal. The district court dismissed the claims against Sisco after a bankruptcy court discharged Evanston's claim against her in her Chapter 7 bankruptcy case. This "effectively exclude[s]" Evanston from pursuing its claim against Sisco. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001) (citation and internal quotation marks omitted). On October 10, 2019, Dr. Lee settled with Evanston and dismissed his appeal.

pursue reimbursement from Aminokit . . . while it s[ought] a declaration of its rights and duties under the policy."[3] *Id.*

In March 2015, Evanston and Aminokit attended a mediation session with Lassley that resulted in a proposed settlement of $260,000. Evanston initially declined to pay the full settlement because it was concerned "that the Lassley case involve[d] a number of uncovered claims and damages." Appellee's Suppl. App. at 179. But Aminokit's attorney, Jerad West, pressured Evanston to pay the full settlement amount by threatening to bring a bad-faith claim against Evanston. He contended that Evanston was "playing a dangerous game[]" because in his view the "judgment on the negligence claim will likely exceed $700,000." *Id.* at 179.

In the communications that followed, Evanston made clear to West that if it settled the case, it would "seek reimbursement for the entire cost of defense and indemnity." *Id.* at 176. With this knowledge, Aminokit "still request[ed] [Evanston] accept Plaintiff's settlement offer by 5 [p.m.]" *Id.* So on March 4, 2016, Evanston agreed to fund the $260,000 settlement, while reserving the right to seek full reimbursement from Aminokit.

On December 9, 2015—before attending the mediation session and paying the settlement—Evanston filed a declaratory-judgment action in the District of Colorado,

---

[3] Under *Hecla Mining Co. v. New Hampshire Insurance*, 811 P.2d 1083, 1090 (Colo. 1991), an insurer is well-advised to defend its insured "unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy[]" or that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured."

4

seeking "a declaration that no defense or indemnity coverage is owed pursuant to the [Aminokit insurance policy] for . . . the Lassley Suit[.]" Appellant's App. vol. 1 at 44–45. Then on March 8, 2016, after funding the Lassley settlement, Evanston amended its complaint, asserting four claims. First, Evanston sought "a declaration that no defense or immunity coverage is owed pursuant to [Aminokit's insurance policy] for the Lassley Suit[.]" *Id.* at 206–12. Second, asserting unjust enrichment, Evanston sought recovery of "Litigation Expenses and Settlement Payment in the Lassley Case" from Aminokit, Dr. Lee, and Sisco, because the "claims and damages were not covered or cannot be covered pursuant to Colorado law and public policy." *Id.* at 212–13. The final two claims alleged that Aminokit and Sisco had made fraudulent misrepresentations and concealments in Aminokit's insurance-policy application and sought damages for this fraud, including the settlement payment.

In response to the amended complaint, Aminokit filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that recovery of the settlement payment would be improper under either an unjust-enrichment or fraud claim. On July 5, 2017, the district court denied the motion to dismiss, concluding that Evanston's allegations of fraud and unjust enrichment sufficed to survive a motion to dismiss. Then, on July 6, 2017, Aminokit's attorneys withdrew from the case. The district court instructed Aminokit to have new counsel "enter an appearance on or before August 11, 2017." Appellant's App. vol. 2 at 457. But Aminokit failed to obtain new counsel or file an answer, so "Evanston moved for the Clerk to enter default against Aminokit . . . on August 16, 2017." *Id.* at 458. On

September 19, 2017, the Clerk entered default against Aminokit. Aminokit then failed to participate in discovery, file anything with the court, or attend any hearings until October 30, 2018 when Aminokit moved the court to set aside the entry of default, which the district court denied on November 19, 2018. On November 8, 2018, Evanston moved for default judgment against Aminokit under Federal Rule of Civil Procedure 55(b)(2).

On January 8, 2019, the district court held a hearing concerning the requested entry of default judgment against Aminokit. And on February 7, 2019, the district court entered default judgment against Aminokit. The district court's judgment held Aminokit liable to reimburse Evanston for the settlement payment as damages for both fraud and unjust enrichment. Ultimately, the district court entered judgment against Aminokit for $427,280.30 ($286,407.36 for the settlement payment, $63,304.07 for defense costs, and $77,568.87 for prejudgment interest). Aminokit timely appealed.

**DISCUSSION**

We review the district court's default-judgment order against Aminokit for an abuse of discretion. *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In challenging a default judgment, a "defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts." *Id.* (citation omitted). But "even in default, a defendant is not prohibited from challenging the legal sufficiency of the admitted factual allegations. The judgment must be supported by a sufficient

6

basis in the pleadings." *Id.* at 765 (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)).

On appeal, Aminokit challenges "only . . . the portion of the judgment entered against it by the District Court consisting of recovery of the amount paid by Evanston to fund its settlement of the *Lassley* suit."[4] Opening Br. 11. To succeed, Aminokit must show both that "Colorado law does not allow for recovery by an insurance carrier of monies paid to settle a third-party liability claim on behalf of its insureds under an unjust enrichment theory" and that the district court erred by including the settlement payment in the damage award for the fraud claims. *Id.* at 11–12. Losing on either issue will defeat the appeal because the district court awarded the settlement payment as damages under both theories. Because we find for Evanston on the fraud issue, we do not consider unjust enrichment.

Fraudulent misrepresentation requires:

(1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it is false; (3) ignorance on the part of the one to whom the representation is made of the falsity; (4) representation made with intention that it be acted upon; [and] (5) representation resulting in damage.

*Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987) (citations omitted).

Similarly, fraudulent concealment requires:

(1) concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is

---

[4] In doing so, Aminokit concedes that the insurance policy is void and that Evanston can recover its defense costs.

7

concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Wainscott v. Centura Health Corp.*, 2014 COA 105, ¶ 77, 351 P.3d 513, 529 (citing *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 109 (Colo. 2011)).

Here, Aminokit concedes that the complaint's allegations satisfy elements (1) through (4) but argues that the complaint's "allegations . . . fail to establish the necessary fifth element of a claim of fraud with respect to [Evanston's] payment of the *Lassley* settlement[.]" Opening Br. 25–26.[5] To support this conclusion, Aminokit makes two arguments. First, it argues that the fraud "did not give rise to a duty to settle[,]" because issuing the policy did not impact Evanston's decision to settle the case.[6] *Id.* at 27. And second, Aminokit points out that Evanston knew of the fraud when it settled Lassley's case, meaning Evanston "could not have been relying on the representations contained in the policy application at the time it decided to settle." *Id.* at 27–28.

Under Colorado law, "[t]he defrauded party may recover such damages as are a natural and proximate consequence of the fraud." *Trimble v. City & Cty. of Denver*, 697 P.2d 716, 724 (Colo. 1985), *superseded by statute on other grounds*, Colo. Rev.

---

[5] Both fraudulent misrepresentation and fraudulent concealment require that damages be caused by the fraud (element 5), so our discussion applies to both.

[6] This argument lacks merit. If Evanston had not been fraudulently induced into issuing the policy, Aminokit could not have pressured Evanston to settle by threatening bad-faith claims. While no duty to settle exists, arguing that the settlement in the Lassley case did not result from the policy being issued does not make sense.

Stat. § 24-10-105 (1986). The damages must stem from the plaintiff's reliance on the fraud. *Green v. Thomas*, 662 P.2d 491, 495 (Colo. App. 1982) ("A common element to all fraud actions is that there be reliance by plaintiff on the representation or the nondisclosure, and that such reliance must result in damage."); *see also Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 558 (Colo. 1988) ("To claim damages from allegedly fraudulent statements, the plaintiff must establish detrimental reliance on the statements." (citing *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 215 (Colo. 1984))).

Here, all agree that "Evanston . . . would not have issued the policy had Aminokit disclosed or communicated the true facts of its operation." Appellant's App. vol. 3 at 521. But Aminokit argues that because Evanston knew of the fraud when it settled, it could not have relied on the fraud when it agreed to fund the settlement. "Generally, a defrauded party cannot recover damages for the period after the victim discovers the fraud, because he no longer has any basis for relying on the misrepresentations." *Thor Power Tool Co. v. Weintraub*, 791 F.2d 579, 585 (7th Cir. 1986) (citation omitted). But "where the defrauded party discovers the fraud after substantial performance or where it would be economically unreasonable to terminate the relationship, he may affirm or continue the contract and then bring suit for his entire damages." *Id.* (internal quotation marks omitted) (quoting *Clements Auto Co. v. Serv. Bureau Corp.*, 444 F.2d 169, 184 (8th Cir. 1971)); *see also TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 694 n.18 (9th Cir. 1990) (agreeing with *Thor Power*'s statement of the general rule, and its exception, for fraud damages). Both parties rely on *Thor Power* for their arguments—Aminokit to argue that

9

Evanston's knowledge precludes showing it relied on the fraud; Evanston to argue that it would have been economically unreasonable for it to walk away from the settlement given the bad-faith claim.

We agree with Evanston that it would have been "economically unreasonable" for it to refuse to pay the settlement because doing so would have placed Evanston at risk of a bad-faith lawsuit. *See Thor Power*, 791 F.2d at 585 (citation and internal quotation marks omitted). An insurer owes its insured a duty of good faith and fair dealing. *See Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984). Violation of this duty can result in a "bad faith" claim against the insurer, judged by a reasonableness standard. *See id.* at 1142. In this case, Evanston was rightfully concerned about a potential bad-faith suit by Aminokit given the threats made by its attorney after Evanston originally balked at paying the settlement. *See* Appellant's App. vol. 3 at 504 (noting that Aminokit "threat[ened]" a bad faith suit if Evanston refused to "accept and fund the settlement"). After learning of the fraud, Evanston was in no position to abandon its defense without risking substantial liability, or at least incurring substantial litigation costs from defending a bad-faith lawsuit. Given these considerations, we conclude that the settlement payment was "a natural and proximate consequence" of Aminokit's fraud. *Trimble*, 697 P.2d at 724.

Colorado public policy supports this conclusion. To start, "[p]ublic policy favors the settlement of disputes, provided they are fairly reached[.]" *Davis v. Flatiron Materials Co.*, 511 P.2d 28, 32 (Colo. 1973). Aminokit's position would make settlement by insurers less likely, especially when the insurer is confident that

10

it will not be responsible for indemnifying its insured. This is so because the insurer would be less likely to settle if it were unable to get back its settlement payment. Thus, in situations in which the insurer believes that coverage will ultimately not be available (meaning no indemnity), the insurer will rationally forgo settlement, leading to fewer settlements in cases where coverage is unlikely. Under *Hecla*, disallowing an insurer from recovering a settlement payment in this case's circumstances would discourage settling because insurers would not be able to get that payment back. Such a result would run counter to Colorado public policy.

In addition, Colorado has adopted a general policy against insurance fraud, listing some of its costs as "increase[d] premiums [that] place[] businesses at risk[,]" and noting that its presence harms "consumers' ability to raise their standards of living and decreases the economic vitality of" Colorado. Colo. Rev. Stat. § 10-1-128(2)(a) (2019). For this reason, Colorado seeks to "aggressively confront the problem of insurance fraud by . . . reducing the occurrence of fraud through stricter enforcement and deterrence." *Id.* Allowing insureds to receive the benefit of insurance coverage, even when they have fraudulently obtained it, would foster—not deter—insurance fraud. It would signal to potential fraudsters that if they can convince their insurance company to settle via the threat of bad-faith litigation, they will benefit from their fraud. Such a result would not comport with Colorado public policy. For all the reasons given, we conclude that Evanston can recover the settlement payment made on behalf of Aminokit as fraud damages.

11

## CONCLUSION

We affirm the district court and dismiss the appeal. We also deny as moot both Aminokit's motion to certify a question of law to the Colorado Supreme Court and Evanston's motion to strike the reference to *Mt. Hawley Insurance Co. v. Casson Duncan Construction, Inc.*, 2016 COA 164, 409 P.3d 619.

Entered for the Court

Gregory A. Phillips
Circuit Judge