**ALLEN ORGAN COMPANY, Appellant, Cross–Appellee,**

v.

**KIMBALL INTERNATIONAL, INC., Macmillan, Inc., and Conn Keyboards, Inc., Appellees, Cross–Appellants.**

Nos. 86–767, 86–789.

United States Court of Appeals, Federal Circuit.

Feb. 12, 1988.

Alfred P. Ewert, of Morgan, Finnegan, Pine, Foley & Lee, New York City, argued for appellant, cross-appellee. Of counsel were David H. Pfeffer, J. Robert Dailey, and John R. Schiffhauer, of Morgan, Finnegan, Pine, Foley & Lee, and Sanford J. Piltch, Allentown, Pa.

Albert L. Jeffers and John Hoffman, of Jeffers, Irish & Hoffman, Ft. Wayne, Ind., argued for appellee, cross-appellants.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Allen Organ Company appeals the judgment of the United States District Court for the Northern District of Illinois,[1] holding after a jury trial that the claims at issue of Watson U.S. Patent No. 3,610,799 (the '799 patent) and Deutsch U.S. Patent No. 3,610,806 (the '806 patent), owned by Allen Organ, are invalid. The issue of infringement was not tried. Kimball International, Inc., Macmillan, Inc., and Conn Keyboards, Inc. (collectively Kimball), defendants in the consolidated trial, cross-appeal the judgment that Allen Organ had not committed inequitable conduct in prosecuting the '799 patent before the United States Patent and Trademark Office. We affirm.

### The Patented Inventions

The '799 and '806 patents deal with organs that electronically reproduce the notes and voices of a pipe organ.

The Watson '799 patent, entitled "Multiplexing System For Selection Of Notes And Voices In An Electronic Musical Instrument", describes a keyboard instrument having tone generators that are multiplexed with note and voice assignment information. Depression of a key elicits a tone that is controlled as to its waveshape and amplification by a tone generator. To resolve the complex problems of the number of tone generators and the circuitry necessary for the twelve musically related frequencies for each octave, according to the Watson '799 patent every key of the organ keyboard is scanned in cyclic sequence, and the actuation of a key or keys is entered as information in parallel digital format showing the order and combination

1. *Allen Organ Co. v. Macmillan, Inc.*, No. 78 C 541, *Allen Organ Co. v. Conn Keyboards, Inc.*, No. 80 C 4599, and *Kimball International, Inc. v.* *Allen Organ Co.*, No. 83 C 4039, consolidated for trial and decided Nov. 15, 1985.

**1558**

of keys actuated. The parallel format is continuously converted to serial format, comprising pulses in appropriate time slots, preassigned to corresponding keys, of a time division multiplexed signal.

The Deutsch '806 patent, entitled "Adaptive Sustain System For Digital Electronic Organ", relates to a sustain feature for electronic organs such as that described by Watson. The '806 patent describes and claims a means whereby selected sounds fade gradually, rather than abruptly, after the organ key is released, thus mimicking the sound of a true pipe organ. The principal object of the Deutsch patent is to

provide means for varying the length of decay of a note sounded in an electronic digital organ ... in accordance with the number of tone generators available for capture by digital data in the multiplexed signal containing the note information.

The claimed inventions of both the '799 and '806 patents were asserted to be embodied in the defendants' electronic organs.

### The '799 Patent

By agreement the issues of patent validity and enforceability were tried first, bifurcated from the issue of infringement. The jury trial on validity and enforceability took four weeks.

### (a) The Jury Verdicts

The parties agreed upon the jury instructions and interrogatories before they were submitted to the jury, with certain objections, as will be discussed. The jury answered twenty-one pages of interrogatories, consisting of thirteen questions almost all of which had multiple parts.

Kimball's defense included the presentation of evidence relating to two electronic organs built by electronics buffs Coe Wescott and Lee Bauscher, and one custom keyboard coupler incorporated in an electronic organ called the Klann/Conn organ. Interrogatories 1–3, grouped under the heading "Prior Invention", were directed to these organs. Responding to these questions, the jury found that these three multiplexed organs were built prior to the date

of invention of the Watson '799 patent, and that none had been abandoned.

The jury also found that the subject matter of eight of the twenty-four asserted claims of the '799 patent was found in the Bauscher organ, the subject matter of thirteen of the twenty-four claims was found in the Wescott organ, and the subject matter of eighteen of the twenty-four claims was found in the Klann/Conn organ.

The subject matter of five of the '799 claims, i.e., claims 4, 22, 23, 32, and 33, was not found in any of the Bauscher, the Wescott, or the Klann/Conn organs. These five claims included limitations related to percussive sounds, and were referred to at trial as the "percussive claims".

The jury also found that the Wescott, Bauscher and Klann/Conn organs were publicly known or used prior to the date of invention of the '799 patent. In response to questions under the heading "Public Use and On Sale" the jury found that the Wescott, the Bauscher, and the Klann/Conn organs were in public use, and the Wescott organ was on sale, before the '799 patent's critical bar date of October 30, 1968.

Answering interrogatories 5(a), (b), (c), and (d), under the heading "Public Use and On Sale", the jury found that "the subject matter of the claims of the Watson '799 patent was present" in an organ built at North American Rockwell Corporation, where Watson and Deutsch were employed. This organ was called the "demonstrator" at trial. The jury found that the demonstrator was in public use and on sale before the '799 patent's critical bar date of October 30, 1968. This four-part interrogatory did not inquire as to specific claims, a matter emphasized as error by Allen Organ.

Under the heading "Anticipation" were interrogatories 10 and 11 on both anticipation and obviousness. In response to part of interrogatory 10 the jury found that of the three '799 patent claims numbered 12, 19, and 20, the "entire subject matter" of claim 19 was found in Pearson U.S. Patent No. 2,989,885 and in Davis U.S. Patent No. 2,601,265. Interrogatory 10 also included questions about Klann U.S. Patent No. 3,614,287, which the jury found disclosed

the subject matter of certain claims of the '799 patent but was filed too late to serve as a reference.

Interrogatory 11(a) asked whether the subject matter of twenty-four listed claims of the '799 patent "would have been obvious to a person having ordinary skill in the art pertaining to the subject matter of the Watson '799 patent at the time the invention was made". The jury answered "Yes" as to claims 1 and 19, and "No" as to the other twenty-two claims.

### (b) The District Court's Judgment

Upon receiving the jury's answers, the court asked counsel for both sides together to "determine what it means as to the further progress of the case". After "digesting" the answers, counsel for Kimball told the court, in the absence of the jury:

> Your Honor, if you look at 5–A through 5–D, that shows the demonstrator on sale and all the claims of the patent that were present in the demonstrator. That is a conclusive finding for the '799 patent.

Counsel for Allen Organ responded:

> If that is interpreted to mean all of the claims including—the jury consistently found that the percussive claims [claims 4, 22, 23, 32 and 33] were not invalid. This [5–A through 5–D] is the only interrogatory which did not cover the claims individually.

The court asked "How many other claims of the '799 are out on the basis of other findings?". Counsel for both sides agreed that all the other '799 claims were "out" based on other findings, but that the five percussive claims were not based only on the answers to interrogatories 5(a) through 5(d), which did not ask the jury for claim-by-claim answers but referred to "the subject matter of the ['799] claims".

The court then proposed to try the infringement issue, which the parties estimated would require three or four days. The court stated that

> the purpose of bifurcation of the Allen v. Kimball case was in part to avoid an unnecessary infringement trial in the event the jury should find the patents invalid.

\* \* \* \* \* \*

> [W]hat prompts this whole inquiry on my part is that the jury has found the patents to be invalid on very narrow grounds which could be upset by the Court of Appeals....

When the jury returned to the courtroom, the court said "[t]he effect of your findings combined is to render both patents invalid, as I am sure you understand." The record does not show a reaction by either counsel to that statement at that time. The jury was not dismissed, pending the infringement trial.

Two days thereafter Allen Organ filed a "motion for interpretation" by the court of the jury's answers, explained as "for the purpose of determining the claims to be put forward for proving infringement". Allen Organ pointed to certain asserted inconsistencies in the jury's answers, on the basis of which Allen Organ argued that in addition to the five percussive claims, the other claims should be included in the infringement trial. The trial court then estimated that the infringement trial would require two weeks. The court denied the motion for interpretation, and stated that infringement would not be tried and that the jury would be discharged.

Allen Organ did not, in its motion for interpretation or at argument thereon, ask the court for recourse to the jury as to any purported inconsistency. None of those purported inconsistencies is now pressed.

Instead, as its principal argument on appeal, Allen Organ asserts that the answers to interrogatory 11(a) are inconsistent with the answers to interrogatories 1–9. This issue was first raised before the district court in Allen Organ's objection to the proposed final judgment. Neither party has complained about lack of opportunity to raise the issue before the jury's discharge, or any other factor that might excuse its failure to do so.

The court entered judgment that all the claims at issue of the '799 (and '806, discussed *infra*) patents were invalid, referring specifically to the jury's answers to

the various interrogatories and entering the holdings that followed from such answers.

The district court denied Allen Organ's subsequent motions for judgment notwithstanding the verdict (n.o.v.), a new trial, or an amended judgment, in which motions Allen Organ asserted that the subject matter of certain claims of the '799 patent had been found by the jury to be, inconsistently, both embodied in prior devices and unobvious.

The court also denied Kimball's motion for judgment n.o.v., which motion challenged the jury's answers concluding unobviousness and absence of inequitable conduct with respect to the '799 patent. Kimball's cross-appeal is solely on the issue of inequitable conduct.

### (c) Arguments

Allen Organ asserts that the jury instructions and interrogatories on the issues of prior invention, public use, and on sale, are incorrect, and also that the jury's answers on these issues are not supported by substantial evidence or are against the weight of the evidence.

Allen Organ states that interrogatories 5(a) through 5(d), directed to the Rockwell demonstrator, should have asked the jury specifically about the five percussive claims, instead of referring broadly to "the subject matter of the claims".[2] Allen Organ told the district court in the motion for interpretation that the jury's findings were contrary to the evidence "because no claim list was presented in connection with these interrogatories", and concluded that "the Jury [was] confused because of the structuring of the interrogatory."

Allen Organ renews on appeal its argument that there was not substantial evidence that the percussive elements of claims 4, 22, 23, 32, and 33 were contained

in the demonstrator, and that substantial evidence did not support the jury's findings that the demonstrator was in public use and on sale.

Allen Organ argues that the jury's findings with respect to embodiment of the claimed invention in the prior devices, and with respect to unobviousness, are fatally inconsistent. Allen Organ also argues that the jury instruction on the issue of obviousness makes it impossible to reconcile the jury's answers.

Both parties agree before us that the jury's answers finding "the subject matter of the claims" in public use or on sale in the demonstrator, and some claims the subject of prior invention, yet also finding the subject matter of twenty-two claims unobvious in light of the instructions on unobviousness, are inconsistent. Both parties thus challenge the integrity of the procedures, and the supportability of the results, in this lengthy jury trial.

### (d) The Instructions and Interrogatories

■ Those issues turning on the assertedly incorrect or confusing jury instructions are governed by Rule 51 of the Federal Rules of Civil Procedure:.

*Rule 51. Instructions to Jury: Objection*

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court, at its election, may instruct the jury before or after argument, or both. No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its

---

**2.** Interrogatories 5(a) and 5(b) are illustrative; the jury's answers are shown:

5(a). Do you find that the Rockwell demonstrator was in public use before the critical date of October 30, 1968?

Yes _X_
No ___

5(b). If your answer to 5(a) is "Yes," do you find that the subject matter of the claims of the Watson '799 patent was present in the Rockwell demonstrator at the time of the public use?

Yes _X_
No ___

verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

The record shows no objection by Allen Organ to the instructions or the interrogatories on the basis of potential confusion of the jury in resolving these questions. There is an affirmative obligation to timely raise such objections. Fed.R.Civ.P. 51; *United States v. Atkinson,* 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *Thor Power Tool Co. v. Weintraub,* 791 F.2d 579, 584 (7th Cir.1986); *Davis v. Consolidated Rail Corp.,* 788 F.2d 1260, 1267–68 (7th Cir.1986); *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 549, 217 USPQ 215, 218 (7th Cir.1982); *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1561, 224 USPQ 259, 264 (Fed.Cir. 1984).

Counsel for both Allen Organ and Kimball participated in the drafting of the jury instructions and interrogatories. Although counsel had argued about certain instructions and interrogatories, the record does not show objection, on any ground now urged, to the texts submitted to the jury.

The objection that interrogatories 5(a) through 5(d) did not distinguish the five percussive claims from the other claims, and thus confused the jury, was not raised before the interrogatories were submitted to the jury. Similarly, Allen Organ now complains that "[d]espite the jury instruction that the experimental use exception applied only if Kimball first proved 'on sale' activity or a 'public use,' there were no jury questions concerning experimental use" with respect to the demonstrator. Allen Organ does not dispute that it did not object to the absence of such jury questions.

At argument on Allen Organ's motion for interpretation the court told counsel

if you look at what you submitted and compare it to what we submitted to the

jury, I do not think you will find any essential difference, and to the extent that the record does not show that you objected to any aspect of the special verdict that you now find trouble with, you have waived any such problem.

Counsel for Allen Organ responded:

Obviously, yes, we realize it, whatever objections were made, et cetera.

We conclude that the district court was correct in holding that Allen Organ had waived its post-verdict challenges to the jury instructions and to the questions that were presented to the jury.

### (e) The Verdict Form

District courts have broad discretion in the conduct of jury trials, including the form of the jury verdict. *See Weinar v. Rollform Inc.,* 744 F.2d 797, 809–10, 223 USPQ 369, 376 (Fed.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2501 (1971).

Rule 49 authorizes the use of two procedures as alternatives to simple general verdicts.[3] Rule 49(a), entitled "Special Verdicts", states:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.... The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

Under Rule 49(a) the jury makes written findings on each factual issue, and the

---

**3.** These procedures originated in England during the twelfth century as a method of avoiding attaint, a procedure whereby a verdict was undone and the jurors severely punished. *See*

Morgan, *A Brief History of Special Verdicts and Special Interrogatories,* 32 Yale L.J. 575, 576 (1923).

court applies the law to the jury's findings. *See* Wright, *The Use of Special Verdicts in Federal Court*, 38 F.R.D. 199, 199 (1965).

Rule 49(b), entitled "General Verdict Accompanied by Answer to Interrogatories", authorizes the submission

> to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.

Rule 49(b) has been described as a middle course between the simple general verdict and the special verdict procedure of Rule 49(a), in that it focuses the jury's attention on the controlling points at issue, and the interrogatory answers provide a check on the propriety of the general verdict. *See* Lipscomb, *Special Verdicts Under the Federal Rules*, 25 Wash.U.L.Q. 185, 212 (1940). *See generally* Comment, *Special Verdicts: Rule 49 of the Federal Rules of Civil Procedure*, 74 Yale L.J. 483 (1965).

The expressed intention of the parties was to achieve a verdict under Rule 49(b), and the parties so described the structure of their proposed jury inquiries. During an exchange in chambers, counsel for Allen Organ explained the form of jury verdict that he and opposing counsel jointly proposed:

> [W]e consider this to be a general verdict in sub-parts consistent with what occurred in [*Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.), *cert. denied*, 469 U.S. 871 [105 S.Ct. 220, 83 L.Ed.2d 150] (1984)] where a set of questions called interrogatories, although they are not true interrogatories in the classic sense of Rule 49, are submitted to the jury. What we are submitting here are questions to the jury which taken together constitute the general verdict.

On the court's inquiry, Allen Organ's counsel added:

The point is that we don't regard these as special verdicts. We regard these as a general verdict broken down into subparts under 49(b) rather than special verdicts under 49(a).

The court expressed skepticism as to this procedural theory, and the trial proceeded upon the court's statement that:

> It does not make any sense to ask these jurors to answer these specific questions which will have implications they do not understand and then at the same time ask them to return a general verdict which could be inconsistent with their finding on one or more of the specific questions.
>
> So the general verdict that they will return will really be the result of their answers to these specific questions. I mean, it may be that when everything is all added up at the end, the patent will be valid or it may be invalid.

Counsel agreed, stating "the manner in which the issue is presented to the jury is within the discretion of the Court." After the jury returned, during discussion with counsel on the form of the judgment order, the court stated:

> I think that the judgment order should recite a judgment based upon the specific findings of the jury.

Kimball and Allen Organ now disagree on the meaning and consequences of the procedures that were followed. Kimball states that since the verdict is controlled by Rule 49(b), a new trial is required:

> When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

Fed.R.Civ.P. 49(b). Kimball also invokes the general rule that has been established in 49(b) cases that a party will be deemed to have waived objection to possible inconsistencies between interrogatory answers if it failed to raise such objection before the jury was discharged. *See* 5A Moore's Federal Practice ¶ 49.04 (2d ed. 1987).

Allen Organ states that the procedure followed was actually that of Rule 49(a), and that Rule 49(a) requires that a new trial be held when a jury has provided inconsistent answers.

Both parties have also contemplated and argued reconciliation of the jury answers, each side arguing that unless such reconciliation is in its favor, a new trial is required.

## (f) Reconciliation

The issue of inconsistent jury findings or verdicts is not unique to patent law. In such procedural matters we apply the discernible law of the forum, in this case the Seventh Circuit. *See Panduit Corp. v. All States Plastic Manufacturing Co.*, 744 F.2d 1564, 1575, 223 USPQ 465, 472 (Fed. Cir.1984).

The Seventh Circuit has spoken clearly with respect to Rule 49(b). In *Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir.1987), the Seventh Circuit reaffirmed the principle that there is an obligation upon counsel to seek return of the jury when the interrogatory answers are inconsistent with each other, and the general verdict is consistent with less than all of the interrogatory answers. Kimball argues that Allen Organ, whose counsel had examined the replies to the interrogatories before the jury was discharged, waived any right subsequently to raise an objection to the general verdict, which both parties intended as a jury verdict in sub-parts as occurred in *Railroad Dynamics*. On this basis, the reasoning of the *Strauss* court applies:

> If counsel who had submitted the questions saw no inconsistency and raised no objection to the discharge of the jury, we can, at least under the circumstances of this case, see no reason why he should be permitted to try his luck with a second jury. Proper respect for the jury verdict and for the court's responsibility to manage its caseload fairly and expeditiously militate against such a course.

*Strauss*, 810 F.2d at 683.

Allen Organ, now characterizing the trial as proceeding under Rule 49(a), argues that under Rule 49(a) its post-trial action or inaction did not extinguish its right to a new trial. In *Bates v. Jean*, 745 F.2d 1146, 1149-50 (7th Cir.1984), the Seventh Circuit remarked that it had not yet decided the question of whether waiver applies generally under Rule 49(a), other than in the specific circumstance of the pro se plaintiff there aggrieved.

However, the Seventh Circuit requires that when it is possible to reconcile the jury's answers, such reconciliation is always preferred to the grant of a new trial. The Seventh Circuit in *Strauss*, 810 F.2d at 683, referred to *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 634-35 (2d Cir.1986), and the remark therein that appellate courts must "struggle" to find a way to reconcile seemingly inconsistent interrogatory answers and verdicts "[i]n fairness to trial courts and in order to preserve parties' Seventh Amendment rights".

Because we conclude that the jury's answers are reconcilable, we do not decide whether Allen Organ's objection thereto was untimely and waived. Nor need we assess the consequences of the parties' and the court's viewpoints as to the procedural framework here constructed.

The Supreme Court has stated, concerning Rule 49(a) interrogatories, that "we ... must attempt to reconcile the jury's findings, by exegesis if necessary ... before we are free to disregard the jury's special verdict and remand the case for a new trial." *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963). The Court quoted *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962): "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."

In *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir.1978), the court held that the special interrogatories were structured so that the jury was required to answer each question without regard to its effect on the answers to other questions. Thus the answers to the interrogatories, on

their face inconsistent, were held reconcilable on the record before the trial court. Similarly in *Miller v. Royal Netherlands Steamship Co.*, 508 F.2d 1103, 1106–07 (5th Cir.1975), the court reconciled apparently conflicting jury verdicts on the issues of unseaworthiness and negligence by "making the plausible assumption" that the jury considered only the acts pertinent to each question without considering the effect of one issue upon the other. The *Miller* court held that since a "logical and probable" rationalization of the jury's answers existed, the verdicts must be accepted even though other equally persuasive possibilities might be shown to exist. *Id.* at 1107–08. *See Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir.1973) (a useful test is whether the apparently inconsistent answers may "be said to represent a logical and probable decision on the relevant issues as submitted"); *see also Aquachem Co. v. Olin Corp.*, 699 F.2d 516, 521 (11th Cir.1983) ("There is a logical and probable explanation for the jury's answers, so the verdict must be accepted").

In the case at bar the trial court's written judgment holding invalid all the claims of the '799 patent is supported by the jury findings that the subject matter of the claims was on sale and in public use in the inventor's own demonstrator. The judgment thus represented a reconciliation with the jury answers that all but two of these same claims were not invalid for obviousness. The jury could have answered that the claimed subject matter was unobvious at the time the invention was made, in light of prior patents or other publications or the prior devices of others. That reconciliation is supported by the structure of the interrogatories.

The interrogatory on obviousness of the '799 claims was simply put, tracking the words of 35 U.S.C. § 103:

11(a). Do you find that Kimball has proved by clear and convincing evidence that the subject matter as a whole of each of the following claims of the Watson '799 patent would have been obvious to a person having ordinary skill in the art pertaining to the subject matter of the Watson '799 patent at the time the

invention was made: [listing the 24 claims at issue]

The lengthy jury instruction on the question of obviousness included the following:

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious or would have been obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was involved.

Prior art includes the following: Prior patents ... prior publications ... patents that have a filing date prior to the date of the invention ... any device or apparatus in public use or on sale before the critical date ... [or] publicly known to be used before the date of the invention ... [or] made or built by another person before the date of invention ... [and] not abandoned, suppressed, or concealed.

The entire instruction occupied four and a half pages, and ended with the following:

The starting place for determining the issue of obviousness ... is with the person of ordinary skill working in his shop with all of the prior art references which he is presumed to know hanging on the walls around him. The question of obviousness depends on not only what the prior art references expressly teach but on what they would collectively suggest to one of ordinary skill in the art.

Armed with the information of the prior art, would it then be obvious or unobvious to this person of ordinary skill in the art to arrive at the invention? This is the question that must be answered by you on the issue of obviousness.

The court's discussion and instructions on the issue of obviousness were given before its discussion and instructions on the issues of public use/on sale. After the court finished its presentation on the law of obviousness, it said: "Now, the next tab is labeled, 'On Sale,' a different subject." There followed a long explanation of the law of "on sale" and "public use", occupy-

ing three pages of transcript; but in this explanation the court did not state that the "on sale" questions must be answered first and then be considered in connection with the previously discussed issue of obviousness, or that what was "on sale" is part of the prior art.

Indeed, Allen Organ argues that the instructions did not make clear that the answers to the questions on public use or on sale could affect the answers on obviousness. We agree. As in *Willard*, the presentation of the instructions can explain why the jury may not have considered its answers to the interrogatories on public use/on sale in its answers to the interrogatories on obviousness.

In contrast, the jury's answers to the interrogatories on obviousness are entirely consistent with the answers to the interrogatories on anticipation. Interrogatories 10(a), 10(b), and 10(c), relating to the three prior art references (the Davis, Pearson, and Klann patents) that were asserted to anticipate the '799 claims, were grouped with interrogatory 11(a) on obviousness; all under the heading "anticipation". These answers, claim by claim, are mutually consistent.

The interrogatories directed to public use and on sale, and to the prior devices, were not listed under the heading "anticipation". Their pertinency was presented in terms of the law of 35 U.S.C. §§ 102(a), (b), and (g), not as a matter of section 103 prior art. It is plausible and reasonable that the jury treated them, as the court instructed, as "a different subject". Reinforcing this conclusion is our observation that neither party nor the trial judge mentioned while the jury was empanelled, or in Allen Organ's motion for interpretation, the inconsistency in the jury's answers that is so heartily pressed on appeal.

> Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct.

*Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933).

We conclude that the district court correctly held that all the claims of the '799 patent were invalid based on the jury's findings that the subject matter thereof had been in public use and on sale more than one year before the critical date, and that these findings are reconcilable with the jury's findings on unobviousness. Allen Organ's request that we order a new trial is denied.

### (g) Judgment n.o.v.

Careful review of the record, necessitated by the parties' combined challenge to the entire trial process, shows substantial evidence in support of the jury's presumed finding that the demonstrator embodied all the '799 patent claims including the percussive claims. For example, Deutsch, inventor of the '806 patent and an employee at Rockwell, testified "all these claims [percussive claims 4, 22, 23, 32 and 33] read on the demonstrator".

The record also shows substantial evidence on which a reasonable jury could have found the demonstrator to have been in public use and on sale, and that the use was not primarily experimental. *See Baker Oil Tools Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1563–64, 4 USPQ2d 1210, 1213–14 (Fed.Cir.1987).

We conclude that the district court did not err in denying Allen Organ's motion for judgment n.o.v. with respect to the '799 patent claims.

### The '806 Patent

The jury, answering interrogatory 11(b), held the subject matter of the six claims at issue of the Deutsch '806 patent to be unobvious. There was no issue of any on sale or public use bar. In response to the only other interrogatory submitted with respect to the '806 patent:

> Do you find that the Deutsch '806 patent fails to describe the Adaptive Sustain System in sufficient detail to enable a person skilled in the art of electronic keyboard musical instruments to make and use the claimed invention?

the jury answered "Yes".

Counsel for both sides agreed that the invalidity of the '806 patent rested

solely on the issue of enablement, 35 U.S.C. § 112. Although enablement is deemed to be a question of law, it is amenable to resolution by the jury. *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533, 3 USPQ2d 1737, 1742–43 (Fed.Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). Appellate review of the jury's verdict requires review of whether a reasonable jury could have made the underlying factual findings necessary to provide substantial evidence in support of the jury's conclusion. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1551–52, 220 USPQ 193, 200–01 (Fed.Cir. 1983).

■ The major challenge to the '806 claims was to the details of recognition logic block 172 of Figure 11 of the specification. Kimball's witnesses on the issue included Dr. John Tooley, presented as an expert in electrical engineering who owned an electronic organ, who testified that the '806 patent did not provide enough information to build the circuit. Another Kimball witness, Alberto Kniepkamp, an engineer with the Lowrey Organ Company, testified that "even if I understand what [certain parts of the patent disclosure] probably do ... I couldn't build it from this block diagram" or its description in the specification.

Allen Organ's witnesses testified that block 172 could be provided by a standard off-the-shelf item, and also that it could be readily designed by one of ordinary skill in the design of such components. Watson, inventor of the '799 patent, was requested by counsel for Kimball, during cross-examination, to provide the circuit details for block 172. Watson completed this task out of court at the district court's invitation. The resulting document, marked "Allen Trial Exhibit 120",[4] bears Dr. Watson's notation that block 172 is a "14 to 16 Line Decoder i.e. National MM74C154". Witness Bruce Fritchman testified that a person skilled in digital circuits would be able to build the recognition logic in block 172,

stating that a "14 to 16 line decoder is a straightforward logical function to implement" and that it was so prior to the filing date of the '806 patent.

The jury was instructed:

The disclosure and the specification must contain—this is a quote from the statute —"a written description of the invention and of the manner and process of making and using it," and must further set forth, "in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains—" in this case the art of electronic keyboard musical instruments—"to make and use the invention."

Allen Organ argues that the instruction was flawed because it "did not advise the jury that the patent need not disclose every minute detail", and that the instruction did not fairly advise the jury of the underlying factual issues to be resolved.

As we have discussed, Rule 51 requires that Allen Organ be deemed to have waived this objection to the instruction by failing to timely raise it. The instruction as given, to which Allen Organ agreed insofar as the point now raised is concerned, is the law of this case. *See Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir.1985), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986) ("in a civil case each party must live with the legal theory reflected in instructions to which it does not object"); *Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615, 222 USPQ 654, 662 (Fed. Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984) ("If no objection is raised, the instructions cannot be challenged on appeal unless great injustice would result").

On conflicting evidence, applying the instruction given, a reasonable jury could have reached the conclusion here reached. The district court did not err in denying

---

4. Although Kimball argues that this document was never admitted, it was referred to by witnesses for both sides, and the district court stated at the close of trial that "whatever I allowed testimony about, I will allow the physical document in." If Kimball disputed the authenticity of the document, it expressed no such objection to the district court.

Allen Organ's motion for judgment n.o.v. with respect to the '806 patent claims.

## Inequitable Conduct

Based on the jury's answers, the district court held that inequitable conduct in the prosecution of the '799 patent had not been proved. Kimball's motion for judgment n.o.v. on this issue was denied, as was its request for attorney fees on the position that this is an exceptional case, 35 U.S.C. § 285.

Kimball argued at trial that three material items were withheld from the patent examiner: Pearson U.S. Patent No. 2,989,-885, Davis U.S. Patent No. 2,601,265, and the public use and on sale status of the Rockwell demonstrator. The jury answered a twelve-part interrogatory headed "Inequitable Conduct". The jury found that the attorney prosecuting the Watson '799 patent before the United States Patent and Trademark Office did not fail to tell the patent examiner the material aspects of the Davis patent, but did so fail with respect to the Pearson patent. The jury found that the withheld Pearson information would not have been considered important by a reasonable patent examiner in deciding whether to issue the Watson patent. To the question of whether the attorney intended to withhold this information, the jury answered "No". With respect to the demonstrator, the jury found failure to advise the examiner about Rockwell's activities in regard to the demonstrator and that the information was material, but that there was no intent to withhold this information; Kimball argues that because the jury found that the Pearson and Davis patents anticipated claim 19 but not claims 12 and 20, and that the demonstrator embodied all the asserted claims of the '799 patent, inequitable conduct must be held as a matter of law.

Inequitable conduct requires proof by clear and convincing evidence of a threshold of both materiality and intent, findings which are then balanced, in this case by the court, to determine whether as a matter of law "the scales tilt to a conclusion that inequitable conduct occurred." *J.P. Ste-*

*vens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1560, 223 USPQ 1089, 1092 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

Kimball argues that despite the jury finding that Pearson would not have been considered important by a reasonable patent examiner, Pearson is highly material because the jury also found that it anticipates a claim of the '799 patent, and therefore that the threshold degree of intent exists as a matter of law. However, materiality does not presume intent, which is a separate and essential component of inequitable conduct. *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1573, 228 USPQ 32, 33 (Fed.Cir.1985); *J.P. Stevens & Co.,* 747 F.2d at 1560, 223 USPQ at 1092. The withholding of information must meet the thresholds of both materiality and intent, *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1363, 220 USPQ 763, 773 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), and absent intent to withhold it is not controlling whether the reference is found to anticipate or otherwise to be material. As discussed in *FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987), "[t]o be guilty of inequitable conduct, one must have intended to act inequitably". Such intent must be shown by "clear and convincing proof". *Id.* Inequitable conduct can not lie when "applicant's failure to disclose art or information did not result from an intent to mislead the PTO." *Id.*

Intent is a factual determination particularly within the province of the trier of fact. The jury finding of the absence of intent is subject to review on the same basis as other jury factual findings. *See generally Connell,* 722 F.2d at 1551–52, 220 USPQ at 200–01. The controlling law, as summarized in *Manitowoc,* is that in addition to a showing of materiality,

> one who alleges a "failure to disclose" form of inequitable conduct must offer clear and convincing proof of: ... (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO.

835 F.2d at 1415, 5 USPQ2d at 1115. The court iterated that "[n]o single factor or combination of factors can be said always to *require* an inference of intent to mislead" (emphasis in original). *Id.* at ..., 5 USPQ2d at 1116. Our review of the jury's factual findings on intent is on the basis of whether a reasonable jury could have found an absence of intent to withhold the Pearson patent, on the evidence adduced.

The record shows that the application for the Deutsch '806 patent and the application for the Watson '799 patent were filed on the same day by the same patent lawyer. They were examined by the same patent examiner. Pearson was referred to in the '806 specification, but not in the '799 specification. Kimball points to testimony by Allen Organ's patent expert Louis Altman that "[t]he attorney blew it. He should have told the examiner about the Pearson patent in the context of the Watson application". Kimball did not mention Altman's further view:

> But no harm was done because indirectly the examiner was able to see the relationship of Pearson in the Deutsch history to Watson, because he did tell him about it in the context of Deutsch and he told him about the connection between Watson and Deutsch.

The jury found that although Watson's attorney did not disclose Rockwell's activities in regard to the demonstrator, and an examiner would have considered such information material, there was no intent on the part of the attorney to withhold such information from the examiner. There was evidence that Rockwell's patent attorneys knew about the demonstrator, but knowledge alone is not culpable intent, and the issue of whether the demonstrator met the requirements of the law governing the public use or on sale bars was vigorously disputed at trial and submitted to the jury for resolution.

Evidence and testimony on all sides of the questions was before the jury. The jury's finding of absence of intent has not been shown to be unsupported by substantial evidence, such that a reasonable jury could not have reached that result. *See*

*Shatterproof Glass Corp. v. Libby–Owens Ford Co.,* 758 F.2d 613, 619, 225 USPQ 634, 636 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985) ("In reviewing a decision denying a motion for judgment n.o.v. ... [w]e review the evidence as a whole, and ascertain whether the verdict is in accordance with law, and whether there was substantial evidence in support of the jury's verdict").

Based on the jury's answers to the questions of materiality and intent the district court concluded that inequitable conduct had not been proved by clear and convincing evidence. *See Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1578, 224 USPQ 409, 415 (Fed.Cir. 1984) ("the court must balance [materiality and intent] and determine as a matter of law whether the scales compel a conclusion that inequitable conduct occurred"). It is thus not controlling whether the Pearson reference was found to anticipate. As the court remarked in *American Hoist,* 725 F.2d at 1363, 220 USPQ at 773:

> There is no reason, however, to be bound by any single standard [of materiality], for the answer to any inquiry into fraud in the PTO does not begin and end with materiality, nor can materiality be said to be unconnected to other considerations....
>
> \*   \*   \*   \*   \*   \*
>
> The jury must also determine how convincing has been the proof of intent, if at all.

The district court did not err in its ruling on the issue of inequitable conduct. Kimball thus has not established a basis for remand for application of 35 U.S.C. § 285.

### Summary

The judgment of invalidity of the claims at issue of Watson U.S. Patent 3,610,799 and Deutsch U.S. Patent 3,610,806 is affirmed, as is the judgment that inequitable conduct was not proved.

AFFIRMED.