The DOW CHEMICAL COMPANY,
Plaintiff,

v.

EBY MINE SERVICE,
et al., Defendants.

No. 91–C–42.

United States District Court,
D. Colorado.

Feb. 16, 1993.

John Lebsack, Denver, CO, Arthur Lieberman, New York City, NY, for plaintiff.

Don Riske, Cheyenne, WY, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Dow Chemical Corporation (Dow) commenced this action seeking damages for infringement of U.S. Patent No. 3, 817, 039 (the '039 patent). Defendants are Eby Mine Service, Inc. (Eby Mine) and two of its officers; R.B. Kemper and Russ Eby. Pursuant to Fed.R.Civ.P. 56, the plaintiff has filed a motion for summary judgment on the issue of patent infringement. Defendants have responded by opposing that motion and by filing a cross-motion for summary judgment pursuant to Fed. R.Civ.P. 56 on the issue of the individual defendants' liability. Plaintiff has responded by opposing that motion.

The parties have fully briefed the issues and oral argument would not materially facilitate the decision process. Jurisdiction is founded on 28 U.S.C. § 1338(a).

### I. FACTUAL AND PROCEDURAL HISTORY.

Subsurface mining operations leave underground voids that, unless backfilled, can result in subsidence of the land above. This case involves a backfilling operation in Wyoming known as the Hanna project.

In 1974, the plaintiff received the '039 patent for a process of backfilling such voids. The process involves using a closed pressurized system to inject into the void solid materials suspended in water. Sufficient velocity is employed to prevent accumulating deposits of material from blocking the portal through which the slurry enters. The '039 process permits introduction of substantial amounts of material with very few boreholes. *See, Dow Chemical Co. v. United States,* 20 Cl.Ct. 623 (1990).[1]

### II. ANALYSIS.

The alleged infringement presents an issue of fact, but summary judgment is ap-

---

1. In *Dow Chemical Co. v. United States,* 20 Cl.Ct. 623 (1990), Dow filed suit against the government alleging infringement of the '039 patent. The Claims Court there held that the '039 pro-

cess was valid and that the representative projects selected by the parties infringed on the patent.

propriate where there is no genuine issue of material fact. *SRI Internat'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1116 (Fed.Cir.1985). Summary judgment is proper if the pleadings, depositions and affidavits, if any, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### A. *Plaintiff's Motion.*

■ Plaintiff has alleged that the defendants either directly infringed on the '039 patent in violation of 35 U.S.C. § 271(a),[2] or, alternatively, induced infringement in violation of 35 U.S.C. § 271(b):[3]

> "The infringement inquiry is broken down into two steps: first, the scope of the claims must be ascertained, and then the trier must decide whether the claims cover the accused device. The latter step, which is the ultimate determination of infringement, is a fact issue, and a motion for summary judgment on that issue should be approached with great care by the district court." *Palumbo v. Don–Joy Co.*, 762 F.2d 969 (Fed.Cir.1985)

The parties agree that the Claims Court's construction of the claim should govern this action including the first step in this analysis. The claim at issue here has three elements: (1) use of a suspension to prevent solid materials from blocking the transport conduit, (2) use of a closed pressurized system, and (3) mound formation. 20 Cl.Ct. 623, 642–44 (1990).

The second step requires determining whether the claim described above covers the Hanna project. The first element of the claim clearly was present in the Hanna project because the contract under which Eby Mine performed the backfilling explicitly called for a suspended slurry. The third element, mound formation to fill the void, is merely a result of the first two elements. *Id.* at 644. Therefore, the only question at issue is whether the second element, a closed pressurized system, was present in the Hanna operation.

Relying on exhibits, depositions and two lengthy affidavits, the plaintiff argues that the Hanna project was indeed a closed system: Although the contract specifications did not call for use of slurry pumps, four such pumps were purchased and used by the defendants. (Kemper depo., p. 48; Eby depo., p. 77–78). The specifications called for pressurized delivery lines from the mixing tank to the borehole. (Kemper ex., p. B00112). The defendants' delivery system was closed (Eby depo., p. 82) and pressure tested. (Kemper depo., p. 57). The elbow joint connecting the delivery lines to the borehole was affixed in a manner allowing it to withstand pressure (Eby depo., p. 62), a refinement unnecessary for a gravity feed system. The borehole was cased to within a few feet of the void. (Kemper ex., p. B00098; Eby depo., p. 58). In addition, the specifications required a pressure relief valve at the borehole. (Kemper. ex. p. B00110). A permanent record log of readings was to be maintained.[4] (Id., p. B00121). The defendants used a pressure gauge capable of measuring both inches of vacuum and pounds of pressure. (Eby depo., p. 66). The effect of all this, the plaintiff argues, was to create a closed pressurized system.

The defendants' response, lacking citations to the record, is facially deficient to withstand a motion for summary judgment. The specifications called for a pressure re-

---

**2.** Direct infringement occurs whenever a person "without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor...." 35 U.S.C. § 271(a).

**3.** 35 U.S.C. § 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."

**4.** The readings from this gauge were lost in a fire.

lief valve, topped by a deflector cap and a system to be run at negative or zero pressure. Ostensibly the presence of the vent meant that the system was open rather than closed. Nonetheless, the plaintiff has presented evidence through affidavits that the system could, and did, operate under pressure. Deflector caps were placed on the vent to direct the flow of material spewing out of the vent. Defendants have not responded to these affidavits except to call them conclusory and suggest that a question of fact still exists.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. While a material question of fact may still be imagined, the defendants have not offered any evidence to support a conclusion contrary to that suggested by the plaintiff. The court, therefore, finds that the plaintiff is entitled to a summary judgment holding that its patent was infringed, if not literally, then at least under the doctrine of equivalents. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

### B. Defendants' Motion.

The individual defendants argue that they may not be held personally liable for any infringement that may have been committed by the corporation. Further, they assert that there is no evidence that they directly and willfully infringed the '039 patent.

■ Plaintiff alleged claims against the individual defendants for both direct infringement and inducing infringement. Whether corporate officers are personally liable under § 271(a) for their corporation's direct infringement of another's patent must be determined by invoking general principles relating to piercing the corporate veil. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed.Cir. 1986).

"Often a party asking a court to disregard the corporate existence will attempt to show that the corporation was merely the alter ego of its officers. *See Zubik*

*v. Zubik*, 384 F.2d 267, 272–72 (3d Cir. 1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). More generally, a court may exert its equitable powers and disregard the corporate entity if it decides that piercing the veil will prevent fraud, illegality, injustice, a contravention of public policy, or prevent the corporation from shielding someone from criminal liability. *Id.* at 272. The court, however, must 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.' *Id.* at 273. Moreover, unless there is at least 'specific intent to escape liability for a specific tort ... the cause of justice does not require disregarding the corporate entity.' *Id.*" *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 552 (Fed.Cir.1990).

■ R.B. Kemper was the President and sole shareholder of Eby Mine. He provided 100% of the financing necessary to operate the corporation and he alone enjoyed the Eby Mine's profits. Similarly, Eby was the vice-president and general manager of Eby Mine. He played a substantial role in bidding for the Hanna Project and was responsible for overseeing most of Eby Mine's routine operations. This evidence is sufficient to create a question of fact as to whether Eby Mine was merely the alter ego of Kemper and Eby. *See, e.g., Orthokinetics, supra.*

■ Personal liability may also be imposed on corporate officers for actively inducing their corporation to infringe a patent, if the officers *knowingly* induced infringement. *Manville Sales*, 917 F.2d at 553. Under this rule:

"It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Id.* (Emphasis in original).

"While proof of intent is necessary, direct evidence is not required: rather, circumstantial evidence may suffice." *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660 (Fed.Cir.1988). The individual defendants maintain that they were unaware of the '039 patent until the complaint in this action was served. A jury, however, reasonably could infer that businessmen such as Kemper and Eby would have been aware of the '039 patent. Moreover, to the extent that certain aspects of the Hanna project seem intended to disguise the system's use of the '039 process, a reasonable jury could infer that the persons responsible for that system were aware of what they were trying to hide. "Intent is a factual determination particularly within the province of the trier of fact." *Allen Organ Co. v. Kimball Int'l, Inc.,* 839 F.2d 1556, 1567 (Fed.Cir.1988). The court, therefore, finds that a genuine issue of fact is present as to whether the individual defendants induced Eby Mine to infringe the '039 patent.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's motion for summary judgement on the issue of patent infringement is granted;

(2) Defendant's motion for summary judgment on the issue of the individual defendants' liability is denied; and

(3) The parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement; and

(4) The March 1, 1993 trial date is vacated to give the parties a reasonable time for good faith settlement negotiations. Trial is reset for May 10, 1993, at 8:30 a.m. to a jury of eight. The trial prep-

aration conference is scheduled May 4, 1993, at 8:30 a.m.