**TRANSLOGIC TECHNOLOGY, INC., Plaintiff,**

v.

**HITACHI, LTD., Hitachi America, Ltd., Renesas Technology America, Inc., Defendants.**

No. Civ. 99–407–PA.

United States District Court, D. Oregon.

Dec. 13, 2005.

Jeffrey Stewart Love, Kevin M. Hayes, Klarquist Sparkman, LLP, Portland, OR, for Plaintiff.

David Axelrod, Schwabe Williamson & Wyatt, P.C., Portland, OR, Nathan Lane III, David S. Elkins, Jose L. Martin, Squire, Sanders & Dempsey L.L.P., San Francisco, CA for Defendants.

## OPINION

PANNER, District Judge.

Plaintiff Translogic Technology, Inc. brings this action for infringement of U.S. Patent No. 5,162,666 (the '666 Patent), for transmission gate series multiplexers used in microprocessors. The defendants are Hitachi Ltd., Hitachi America, Ltd., and Renesas Technology America, Inc.

In the first trial, the jury found that claims 16 and 17 of the '666 Patent were not anticipated, and this court found that the claims were not obvious. In the second trial, the jury found that defendants had infringed claims 16 and 17; that Hitachi, Ltd. had induced infringement; and that plaintiff was entitled to damages.

Defendants move for judgment as a matter of law on plaintiff's inducement claims as to third-parties; to reconsider the denial of defendants' previous motion for judgment as a matter of law on anticipation; and to partially reconsider claim construction. I deny defendants' motions.

## DISCUSSION

■ In an appeal from this court's judgment, the Federal Circuit will apply its own law to substantive patent issues. Ninth Circuit law governs the procedural standards for defendants' post-trial motions. Shockley v. Arcan, Inc., 248 F.3d 1349, 1358 (Fed.Cir.2001).

### I. Judgment as a Matter of Law on Third–Party Inducement Claims

Defendants move for judgment as a matter of law on plaintiff's claims that Hitachi, Ltd., induced Sega Enterprises Ltd. of Japan (Sega Japan) and Casio Computer Co., Ltd. of Japan (Casio Japan) to infringe plaintiff's patent. Plaintiff alleges that Sega Japan's Dreamcast product and Casio Japan's Classpad 300 calculator were imported into the United States

and contain microprocessors made by Hitachi, Ltd. that include infringing circuits, and that Hitachi, Ltd. encouraged Sega Japan and Casio Japan to import products containing infringing circuits.

### A. Standards for Judgment as a Matter of Law

In analyzing a motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of that party. *Horphag Research Ltd. v. Pellegrini,* 337 F.3d 1036, 1040 (9th Cir.2003), *cert. denied,* 540 U.S. 1111, 124 S.Ct. 1090, 157 L.Ed.2d 900 (2004). To grant a motion for judgment as a matter of law, the court must find that there is "no legally sufficient evidentiary basis for a reasonable jury to find" in favor of the nonmoving party. Fed.R.Civ.P. 50(a)(1).

■ "Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Sciences Univ.,* 327 F.3d 876, 881 (9th Cir.2003). The court may not substitute its view of the evidence for that of the jury. *See Costa v. Desert Palace, Inc.,* 299 F.3d 838, 859 (9th Cir.2002) (en banc), *aff'd,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The court may not determine credibility or weigh evidence. *Id.*

### B. Discussion

Here, the jury was instructed that to establish inducement, plaintiff was required to prove that (1) Hitachi, Ltd., encouraged or instructed another person to perform an infringing act; (2) Hitachi, Ltd., knew of the '666 Patent; (3) Hitachi, Ltd., knew or should have known that its encouragement or instructions would likely result in the other person importing into or selling in the United States the end-product containing a microprocessor with infringing circuits; and (4) the other person infringed the '666 patent.

■ A patentee may use circumstantial evidence to prove intent to induce infringement, and the fact-finder may infer intent from the evidence. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1380–81 (Fed. Cir.2005) (citations omitted) (reversing summary judgment for the alleged inducer on an inducement claim supported by circumstantial evidence). Intent is a factual determination "particularly within the province of the trier of fact." *Allen Organ Co. v. Kimball Int'l, Inc.,* 839 F.2d 1556, 1567 (Fed.Cir.1988) (proof of inequitable conduct).

■ Here, the evidence was sufficient for a jury to find that Hitachi, Ltd. induced Casio Japan and Sega Japan to infringe the '666 Patent. Although evidence of Hitachi, Ltd.'s intent was largely circumstantial, the jury could infer intent to induce infringement from the evidence plaintiff presented regarding Hitachi Ltd.'s conduct, including Hitachi, Ltd.'s marketing plans and sales meetings with Casio Japan and Sega Japan.

Regarding Sega Japan, the parties stipulated that Hitachi, Ltd. sold more than 10 million units of SH7091, SH7091R, and SH7091T microprocessors to Sega Japan, for $288 million; that Hitachi, Ltd. knew that Sega Japan was using the microprocessors in its Dreamcast product; that employees of Renesas Technology America, Inc. met with Sega of America, Inc. employees to discuss the use of SH–4 microprocessors and the Dreamcast product; that Hitachi, Ltd. knew that Dreamcast products containing the SH7091, SH7091R, and SH7091T microprocessors were imported and sold in the United States; and that about 15% of the SH7091, SH7091R, and SH7091T microprocessors sold by Hi-

tachi, Ltd. to Sega Japan in Japan for $49 million were later sold as part of Dreamcast products in the United States. A reasonable jury could infer from the evidence that Hitachi, Ltd. sold infringing microprocessors to Sega Japan and encouraged Sega Japan to use the infringing microprocessors in Dreamcast products that Hitachi, Ltd. knew would be imported into the United States, and that Sega Japan did import the Dreamcast products into the United States.

The evidence was also sufficient for the jury to find Hitachi, Ltd. liable for inducing infringement as to Casio Japan.

Because I deny defendants' motion for judgment as a matter of law on the merits, I need not address plaintiff's contention that defendants failed to raise these issues at trial.

## II. Motion to Reconsider Denial of Judgment as a Matter of Law on Anticipation

Defendants seek reconsideration of this court's order denying judgment as a matter of law on defendants' anticipation defense. At the validity trial, the jury found that claims 16 and 17 of the '666 Patent were not anticipated by prior art. I denied defendants' motion for judgment as a matter of law on anticipation.

Defendants now contend that I should adopt the most recent claim construction of the Board of Patent Appeals and Interferences (the Board) regarding the significance of intermediate outputs that are connected to circuits outside of the multiplexer circuit. Defendants argue that if the Board's claim construction is adopted, then this court must hold that three prior art references anticipate claim 16 of the '666 Patent: the Oklobzija article, Goto Japanese patent JP '531, and Goto Japanese patent JP '529.[1]

## A. The Board's Rulings Do Not Require Reconsideration

Defendants argue that the Board's opinion and claim construction "are part of the file history of the '666 patent, and so must be considered as part of the claim construction process. This portion of the file history was not available to the Special Master and the Court at the time the original claim construction order was entered."

Plaintiff filed this action in March 1999. Because of the reexamination proceedings that began in July 1999, in September 1999, this court granted defendants' motion to stay.

In December 2002, the court lifted the stay of litigation because the reexamination proceedings appeared likely to continue for years. This court determined that plaintiff deserved its day in court, despite the possibility that the reexamination proceedings might some day produce rulings that were inconsistent with this court's rulings. The Special Master reviewed the reexamination file up to that time in writing his report on claim construction. This court held the trial on validity in October 2003.

Meanwhile, reexamination proceedings proceeded at a somewhat slower pace. *Cf.* 35 U.S.C. § 305 (reexamination proceedings must be conducted with "special dispatch"). The PTO granted the request for reexamination in July 1999. Six years and five reexaminations later, the Board issued the claim construction on which defendants now rely.

▉ If a district court was obliged to alter its claim construction to conform to a later claim construction issued by the Board, then there would be no reason to proceed with litigation while reexamination

---

1. The parties are familiar with the full cita- tions for these items of prior art.

proceedings were pending. District courts are not, however, bound by the Board's rulings, and district courts are not required to stay litigation under these circumstances. *See Vitronics Corp. v. Conceptronic, Inc.*, 36 F.Supp.2d 440, 441 (D.N.H.1997). The Federal Circuit is the proper forum to resolve conflicts between this court's claim construction and the Board's claim construction.[2]

## B. The Board's Claim Construction Is Not Persuasive

■■■■■ The patent terms at issue describe connections in the multiplexer circuit between the input and output terminals. One of the patent terms states, "one of the fourth stage input terminals coupled to the third stage output terminal." Two other patent terms are similar except that they describe the connections between the third stage input terminal and the second stage output terminal, and between the second stage input terminal and the first stage output terminal.

In construing these claims, the Special Master thoroughly analyzed the effect of intermediate outputs:

> One could argue endlessly over fine points like whether a "signal" that is output to inactive circuitry performs any function at all, or whether outputting a value to circuitry that is incapable of processing that value can really be regarded as coupling that value to an input of that circuitry. In the view of the S[pecial] M[aster], the only rational way to approach this problem is by looking at each claim as a whole. When this is done, it is seen that the claim defines a multiplexer circuit, and if the TGM

stages are hooked up as recited in the remainder of the claim, the result will be a N:1 multiplexer circuit. The question then becomes: Does an intermediate output branching off to other circuitry destroy the character of the circuit as an N:1 multiplexer? Plaintiff concedes that it does where the other circuitry generates an output value. But is this so when the other circuitry does nothing with that intermediate output? In the view of the SM, this is a classic factual question of infringement. Experts can undoubtedly be of assistance to the Court and the jury in deciding whether a particular instance of intermediate branching does or does not result in something that can be regarded as an N:1 multiplexer circuit.

This court adopted the Special Master's recommended construction, and interpreted the term in part as follows:

> This means that the third stage output terminal cannot also be coupled to other circuitry such that the overall result is not a N:1 multiplexer circuit.

The Board considered this claim construction to be incomplete. The Board added its own interpretation, which defendants now contend this court should adopt:

> However, a multiplexer structure does not cease to become a multiplexer because of the way the intermediate and/or final TGM outputs are connected to surrounding circuitry. Therefore, we interpret this limitation to not preclude coupling the third stage output terminal to other circuitry.[3]

**2.** District courts apply different standards than the Board in construing patent claims. The court must construe claims in light of the statutory presumption that an issued patent is valid, while in reexamination proceedings the Board interprets patent claims as broadly as

reasonably possible. *See In re Etter,* 756 F.2d 852, 855–59 (Fed.Cir.1985) (en banc).

**3.** The Board considered its claim construction on this issue to be dictum, stating that "[t]his difference in interpretation plays no part in the decision."

The Board's most recent claim construction does not require reconsideration. As the Special Master stated, "the claim limitation does not preclude intermediate outputs unless the presence of such an output would result in a circuit that is not a multiplexer. *These ultimate determinations are factual questions of infringement.*" (Emphasis added.) I have previously explained why the jury was to resolve the dispute over intermediate outputs:

> Here, the jury was instructed that a "multiplexer" was a "circuit that accepts a plural number (N) of input signals and, based on the state of control signals that are received by the multiplexer, selects as an output a single one of the input signals." The jury was instructed that the phrase "one of the second stage input terminals coupled to the first stage output terminal" "means that the first stage output terminal cannot also be coupled to other circuitry such that the overall result is not a N:1 multiplexer circuit." The jury received analogous instructions that the second and third stage output terminals cannot also be coupled to other circuitry if the result would not be a N:1 multiplexer circuit. The jury heard conflicting expert testimony on whether the prior art circuits cited by defendants as anticipatory were N:1 multiplexer circuits.

> .    .    .    .    .

> Similarly, plaintiff presented substantial evidence that the prior art adder circuits cited by defendants used "live" intermediate outputs that were necessary to their function as adder circuits. The jury could reasonably find that because of the live intermediate outputs, the adder circuits cited by defendants operated effectively as 4:3 or 5:4 circuits, rather than 4:1 or 5:1 multiplexer circuits.

The parties presented conflicting evidence on this issue at the validity trial. Both the inventor and plaintiff's expert testified that prior art circuits which used live intermediate outputs did not function as N:1 multiplexers. Defendants presented expert testimony to the contrary. The verdict indicates that the jurors agreed with plaintiff's position.

The effect of live intermediate outputs presented a factual issue for the jury to resolve. I do not adopt the Board's most recent claim construction on the effect of intermediate outputs.

As another ground for reconsideration, defendants cite a recent Federal Circuit decision on claim construction, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir.) (en banc), *petition for cert. filed*, 74 U.S.L.W. 3308 (2005) (No. 05–602). In *Phillips*, the court criticized *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir.2002), as allowing a court construing patent claims to adopt dictionary definitions of the words used in a patent claim "entirely divorced from the context of the written description." 415 F.3d at 1321.

The Special Master did discuss the *Texas Digital* opinion in his initial report and recommendation on claim construction. In summarizing the holding of *Texas Digital*, the Special Master stated, "By examining relevant dictionaries, encyclopedias and treatises to ascertain possible meanings that would have been attributed to the words of the claims by those skilled in the art, and by further utilizing the intrinsic record to select from those possible meanings the one or ones most consistent with the use of the words by the inventor, the full breadth of the limitations intended by the inventor will be more accurately determined and the improper importation of unintended limitations from the written description into the claims will be more easily avoided." However, the Special

Master also noted that the specification is the "single best guide to the meaning of a disputed term," a statement that is in accord with *Phillips*. *See* 415 F.3d at 1315 (emphasizing importance of the specification).

The Special Master's claim construction was not "entirely divorced" from the written description. The Special Master thoroughly analyzed all relevant evidence in arriving at his construction of the terms of the patent claims. The *Phillips* opinion's partial repudiation of *Texas Digital* does not justify revisiting claim construction.

Because I deny defendants' motion for reconsideration on the merits, I do not address plaintiff's argument that defendants are judicially estopped from raising these issues.

### III. Defendants' Motion for Partial Reconsideration of Claim Construction Order and Motion for New Trial on Validity

Defendants move for an order under Federal Rule of Civil Procedure 54(b) correcting this court's claim construction. Defendants again rely on the Board's most recent claim construction, arguing that "[t]his Court should construe the claim in the same way the [Board] construed it."

█ The Board interpreted the term "coupled to receive" as "terminal capable of receiving." I agree with plaintiff that the Board's construction of "coupled to receive" is not persuasive. The term "coupled" implies a connection, while the Board's construction of "coupled" as "capable of receiving" would not necessarily require an actual connection.

█ Defendants cite the Board's determination that "input variables" and "control signals" are not part of the claimed structure of the '666 Patent. Although the signals themselves may not be part of the claimed structure, the input terminals that receive the signals are part of the claimed structure. There was sufficient evidence at trial from which a reasonable jury could find that prior art circuits which did not allow the reception of four or five different input variables did not anticipate claims 16 or 17 of the '666 Patent. Similarly, a reasonable jury could find that prior art circuits which were not coupled to allow three or four different control input signals did not anticipate.

I deny defendants' motion for partial reconsideration. I deny plaintiff's motion to strike the motion to reconsider.

### CONCLUSION

Defendants' motions for judgment as a matter of law on inducement (# 780), for reconsideration on anticipation (# 815), and for partial reconsideration of claim construction (# 826) are denied.